[Filed February 10, 1888.]

# THE DALLES LUMBERING COMPANY, RESPONDENT, v. ANDREW URQUHART, APPELLANT.

CONSTITUTIONAL LAW — EMINENT DOMAIN — PUBLIC USE. — It is not for the courts to say in what particular instances or for what particular purposes the power of *eminent domain* may be exercised. That belongs exclusively to the legislature, limited only the by Constitution, and that is the *use* must be *public*, and *just* compensation must be made.

PUBLIC USE — QUESTION FOR THE LEGISLATURE — WHETHER. — If the public interest can be in any way promoted by the taking of private property, it is in the wisdom of the legislature to determine whether the benefit to the public will be of sufficient importance to render it expedient for them to exercise the power of *eminent domain*, and to authorize an interference with the private rights of individuals for that purpose.

Appeal from Wasco County.

*C. B. Bellinger*, for Appellant.

*F. P. Mays*, and *A. S. Bennett*, for Respondent.

STRAHAN, J. — The object of this action is to appropriate so much of the defendant's land as is necessary for the line of plaintiff's canal across the defendant's premises, which is alleged to be a strip ten feet wide. The complaint shows that the plaintiff is incorporated under the laws of this State, authorizing the formation of private corporations, and that the enterprise, occupation, and business for which it was incorporated, and in which it proposes to engage, is, among other things, to construct a canal with all the necessary branches, fixtures, buildings, and

appurtenances from the immediate vicinity of the point on the east branch of Hood River, commonly known as "Dog River," where the same crosses the township line between township 1 and 2 south, of range 10 east; thence across the divide in an easterly direction to what is commonly known as Mill Creek; thence down along the course of said Mill Creek to a point within the corporate limits of Dalles City, in Wasco County, Oregon; and to maintain and operate such canal and branches, and carry for itself and for hire, through and from all points along the same, all kinds of wood, lumber, and materials to said Dalles City, and to carry water through the same from said river to said Dalles City for the purpose of furnishing the citizens of said town during the whole year, and all others who desire to purchase the same, with wholesome fresh water, which they are now unable to procure.

The answer alleges that plaintiff's business is the constructing and operating of a *flume* between the points named in complaint, and of floating lumber, wood, and other materials manufactured by the plaintiff down said flume to said Dalles City. The said proposed flume is to be constructed for the greater part of its length of lumber, and is to be what is known as V shaped, with dimensions not to exceed three feet in height by four and a half feet on the top. That said proposed flume is not intended to be and will not be suitable for use by any boat, vessel, or water craft, or for any purpose of navigation. The reply denies the new matter in the answer. The plaintiff had judgment below, from which this appeal is taken.

1. There were no exceptions saved upon the trial in the court below. There is, therefore, no questions presented for review on this appeal except such as may be assigned on the pleadings, if any. No question is made as to the sufficiency of the verdict to cover all the issues made by the pleadings, and we cannot therefore examine that question. The verdict of the jury assesses the defendant's damages at thirty-five dollars, which amount having been paid into court by the plaintiff for the defendant, the court gave judgment appropriating the land described in the complaint to the plaintiff's use. The only question, therefore, which can

possibly arise on this appeal is, whether or not the complaint states any facts which would authorize the plaintiff to appropriate the defendant's land for the line of its canal.

2. The appellant's contention is, that the use to which this land is sought to be appropriated is a *private use* and in no sense public. No one would contend that such appropriation could be made for a use that is private and not a *public use* within the meaning of the Constitution. That instrument, article i., section 18, provides: "Private property shall not be taken for public use . . . . without just compensation; nor except in case of the State, without such compensation first assessed and tendered." This is equivalent to saying it shall not be taken for private use, even though just compensation be made. It therefore becomes necessary for us to determine whether or not the taking of the defendant's property for any of the purposes specified in the complaint is a taking for *public use.*

Chapter 32, page 1432, vol. 2 of Hill's Code defines the manner and purposes for which private corporations may be formed in this State, as well as in what particular cases private property may be appropriated by such corporations. Section 3239 defines what corporations may appropriate private property in furtherance of the purposes of such corporation, and is as follows: "A corporation organized for the construction of any railway, macadamized road, plank road, clay road, *canal*, or bridge, or the conducting of water by means of pipes laid under the surface of the ground, shall have a right to enter upon any land between the *termini* thereof, for the purpose of examining, locating, and surveying the line of such road or *canal*, water pipes, or the site of such bridge, doing no unnecessary damage thereby." And section 3240 expressly authorizes such corporation to appropriate so much of said land as may be necessary for the line of such road or *canal*, or the site of such bridge not exceeding sixty feet in width, etc. Is the use to which this land is sought to be appropriated a public use? That is the only question necessary to consider. It is not for the courts to say in what particular instances or for what purposes the power of *eminent domain* may be exercised; that power belongs exclusively to the legislature,

limited only by the Constitution, and that is, the use must be public and just compensation must be made.

Says an eminent American author: "As the power to take is universal, so it is absolute; that is to say, the legislature are the sole judges of the existence of the exigency which demands the sacrifice of the rights of individuals. 'I admit,' says Mr Chancellor Walworth, 'that the legislature are the sole judges as to the expediency of exercising the right of eminent domain for the purpose of making public improvements, either for the benefit of the inhabitants of the State generally, or of any particular section thereof.'" (*Varrick* v. *Smith*, 5 Paige, 160.)

"It is the undoubted and exclusive province of the legislature," says the Supreme Court of the State of Maine (*Spring* v. *Russell*, 7 Greenl. 292), "to decide whether the public exigencies require that private property be taken for public uses." (Sedgwick's Stat. and Const. Law, 512.) Another elementary writer (Mills on Eminent Domain, § 11), states the same principle somewhat more fully: "The legislature is the proper body to determine the necessity of the exercise of the power and the extent to which the exercise shall be carried, and there is no restraint upon the power save that requiring that compensation shall be made. As soon as the court has arrived at the conclusion that the use is public, then the judicial function is gone and there is no restraint on the legislative discretion. The degree of public usefulness need not be determined by the court, or whether the proposed plan will accomplish the end desired. Statutes palpably improvident or hasty must still be sustained by the courts. . . . ." And Judge Cooley's Const. Lim. page 528, maintains the same doctrine.

The legislature has declared that private property may be taken for the line of a *canal*, and if this is a public use the exercise of the power must be upheld. Chancellor Kent says that "if the public interest can be in any way promoted by the taking of private property, it must be in the wisdom of the legislature to determine whether the benefit to the public will be of sufficient importance to render it expedient for them to exercise the power of eminent domain, and to authorize an interference with the private rights of individuals for that purpose." (2

Kent Com. 340.) So it is said by Shaw, C. J., in *Hazen* v. *Essex Company*, 12 Cush. 475: "In general, whether a particular structure, a bridge, or a lock or canal or road is for public use, is a question for the legislature, and which may be presumed to have been correctly decided by them. (*Commonw.* v. *Reed*, 4 Pick. 463.) That the improvement of the navigation of a river is done for the public use has been too frequently decided and acted upon to require authorities. And so to create a wholly artificial navigation by canals." The same case then approves the establishment of a mill power for manufacturing purposes as a public use, and cites many authorities; but as to this we express no opinion.

The term "public use" in this connection does not appear to have received an exact or precise judicial definition. The nature of the work or improvement, the surrounding circumstances and conditions, and the general policy of the State appear to have frequently exercised a controlling influence on the subject. In some of the States it has been closely restricted, while in others it has been more liberally construed. The industries of this State are in their infancy, and its resources are comparatively undeveloped, and we would hesitate before laying down a rule of construction that might retard the growth or development of either. The public certainly have an interest in the cheap delivery of the timber, lumber, and other products of the forest, or whatever other commodity may be transported by being floated to cities or other places for consumption. So in many parts of the State the use of water for purposes of irrigation is of great utility. By its use the "desert is made to blossom," and large sections of waste and unproductive land may be reduced to a state of fertility and productiveness, thus adding materially to the wealth, population, and general resources of the State. For these purposes as well as more enlarged systems of navigation by boats, canals may be useful and necessary, and in such cases it is not perceived why the power of eminent domain may not be invoked. These and other like improvements may be of just as much public utility as railroads, plank roads, clay roads, or bridges and the like, in furtherance of which the power is fre-

quently exerted without a question. Besides this the matter of furnishing pure water to a city is of so much public concern that the power in question has always been exercised in aid of such purpose when necessary./

We have concluded, therefore, that the complaint does state a case in which the power of eminent domain may be exercised. This conclusion has been reached, not without some doubt and hesitation, particularly on the part of CHIEF JUSTICE LORD, but we all concur in affirming the judgment, and it is so ordered.