Argued March 25, affirmed May 11, rehearing denied June 29, 1920.

# HAMMOND LUMBER CO. v. PUBLIC SERVICE COMMISSION.

### (189 Pac. 639.)

**Carriers—Rates are Subject to Control of Public Service Commission.**

1. Under Laws of 1913, page 748, the right to fix rates for transportation primarily is lodged in the carrier, but subject, under Section 6906, L. O. L., to control and revision by the Public Service Commission either on its own motion or at the complaint of interested parties.

Carriers—Rates must be Reasonable.

2. Under Section 6887, L. O. L., the object to be obtained and the canon by which all the activities of the Public Service Commission are controlled is to establish a reasonable rate for services rendered or to be rendered by the carrier; unjust and unreasonable charges being prohibited.

Constitutional Law—Power to Compel Service and Reasonable Charges is Legislative.

3. The power to compel railroads to render adequate service and to charge reasonable rates for it is legislative in its nature and not judicial.

Carriers—Finding as to Reasonableness of Rates Contrary to Evidence Beyond Power of Commission.

4. A finding of the Public Service Commission as to the reasonableness of a railroad's rates made without evidence or against the evidence is arbitrary and beyond the power of the commission, and an order based thereon is contrary to law and subject to be set aside by a court of competent jurisdiction.

Carriers—Reasonableness of Rate Fixed by Public Service Commission is Only Justiciable Question in Suit to Set Order Aside.

5. In suit to set aside an order of the Public Service Commission establishing rates for a railroad, the reasonableness of the rate is the only justiciable question, and the court will not assume the place of the commission or set its order aside on its own conception of its wisdom.

Carriers—Railroad Serving Logging Territory Entitled to Rates Which Provide for Amortization of Value of Road.

6. Under Article I, Section 18, of the Constitution, a railroad which serves a logging territory and will be without value save as junk on exhaustion of timber resources is entitled to charge such rates as will not only give a reasonable return on the money invested, plus interest charges, but will also provide for amortization of the plant.

Carriers—Reasonable Interest on Investment Should be Allowed from Beginning.

7. In fixing rates for a railroad, a reasonable rate of interest on the investment in the property should be allowed from the beginning of the undertaking.

Carriers—Matter of Rates Continually Under Scrutiny of Commission.

8. Under Section 6906, L. O. L., the matter of a railroad's rates is continually under the scrutiny of the Public Service Commission in the exercise of a flexible, administrative authority, and can be reopened at any time, either on its own motion or the petition of interested parties.

From Marion: GEORGE G. BINGHAM, Judge.

Department 2.

The plaintiffs are owners of large tracts of timber in Columbia County in a region served by the Columbia & Nehalem River Railroad Company, which owns and operates a railroad about 27 miles in length in that county, mainly for the purpose of hauling logs to the Columbia River. The Railroad Company filed with the Public Service Commission of Oregon its schedule of freight rates, which was contested before the commission by the plaintiffs here, as to the rate to be charged on logs. After a hearing before the commission, in which the plaintiffs and the Railroad Company were both represented, the commission made an order fixing the rate on logs at certain figures. Dissatisfied with this order, the plaintiffs instituted this suit against the commission to set aside the rates fixed by it. The Circuit Court affirmed the order of the commission and the plaintiffs have appealed.                 AFFIRMED.

For appellants there was a brief over the names of *Mr. William C. McCulloch* and *Mr. Joseph N. Teal,* with an oral argument by *Mr. McCulloch.*

For respondent there was a brief over the names of *Mr. George M. Brown,* Attorney General, *Mr. J. O. Bailey,* Assistant Attorney General, and *Messrs. Veazie & Veazie,* with oral arguments by *Mr. J. C. Veazie* and *Mr. Bailey.*

BURNETT, J.—The authority for a suit of this nature is found in Section 6910, L. O. L., reading thus:

"Any railroad or other person, persons or corporation interested in or affected by any order of the commission fixing any rate or rates, fares, charges,

classifications, joint rate or rates, or any order fixing any regulations, practices or service, being dissatisfied therewith, may commence a suit in the Circuit Court of Marion County against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates, fixed in such order, is unlawful, or that any such regulation, practice or service prescribed or fixed in such order is unreasonable, in which suit a copy of the complaint shall be served with the summons as in civil actions. The commission shall serve and file its answer to said complaint within ten days after the service thereof, whereupon said suit shall be at issue and stand ready for trial upon ten days' notice by either party. All suits brought under this section shall have precedence over any civil cause of a different nature pending in said court, and the Circuit Court shall always be deemed open for the trial thereof, and the same shall be tried and determined as a suit in equity. In all trials under this section, and Sections 6911, 6912 and 6913 hereof, the burden of proof [shall] be upon the plaintiff to show by clear and satisfactory evidence that the order of the commission complained of is unlawful, or unreasonable, as the case may be.''

1–3. Primarily the right to fix the rate for transportation is lodged in the carrier (Chapter 361, Laws of 1913), but subject to control and revision by the Public Service Commission, either on its own motion or at the complaint of interested parties: Section 6906, L. O. L. The object to be attained, and the canon by which all the activities of the commission are controlled, is to establish a reasonable rate for services rendered or to be rendered by the carrier, every unjust and unreasonable charge being prohibited as unlawful: Section 6887, L. O. L. The power to compel railroads to render adequate service and to charge reasonable rates for such services is

legislative in its nature, and not judicial. It has been held in *State* v. *Corvallis & Eastern R. R. Co.,* 59 Or. 450 (117 Pac. 980), that the appointment of a commission to fix certain rates and practices as reasonable is not a delegation of legislative power; the principle being that, while a legislative assembly cannot delegate its powers to enact laws, it may direct the application of a statute to a specified state of facts which depend upon the existence of certain conditions to be determined in a particular manner. The ascertainment of the conditions governing the reasonableness of rates to be charged for transportation of people and property is confided to the commission and at least in an ancillary sense, this may be classed as a branch of the legislative power.

The Supreme Court of Wisconsin, from the enactments of which state our Public Service Commission statute is copied in large measure, speaking by Mr. Justice TIMLIN, in *Minneapolis etc. Ry. Co.* v. *Railroad Commission of Wisconsin,* 136 Wis. 146 (116 N. W. 905, 17 L. R. A. (N. S.) 821, uses this language:

"This law (Chapter 362, Laws of 1905), establishes, and thenceforth assumes, the existence of rates, charges, classifications, and services discoverable by investigation, but undisclosed, which are exactly reasonable and just. It commits to the railroad commission the duty to ascertain and disclose that particular rate, charge, classification, or service. The law intends that there is only one rate, charge, or service that is reasonable and just. When the order of the commission is set aside by the court, it is because this reasonable and just rate, charge, classification, or service has not yet been correctly ascertained. When the order of the commission has been rescinded or changed by the commission because of changed conditions, it is because there is a new reasonable rate to be ascertained and disclosed, applicable to

such new conditions and fixed by force of law immediately when the new conditions come into existence. But the theory and the mandate of the law is that this point always exists under any combination of conditions and is always discoverable, although not always discovered. Until it is discovered and made known, the former rates and service prevail. The order of the commission is *prima facie* evidence that the rate, charge, or service found and fixed by it is the particular rate, charge, or service declared by the legislature in general terms to be lawful and to be in force. If it were conceded that the commission had power or discretion to fix one of several rates, either of which would be just and reasonable, it would be hard to say that this was not a delegation of pure legislative power to the commission. But the theory of this law is to delegate to the commission the power to ascertain facts and to make mere administrative regulations.

"If this court or the Circuit Court were by the statute in question authorized to investigate the subject anew, to put itself in the place of the commission and search for this reasonable and just rate, with power to substitute its own judgment of what is reasonable and just for the judgment of the commissioners, the statute might be subject to grave criticism. But the courts are not by this statute so authorized. The authority given to the Circuit Court is not to search for or disclose or declare this 'reasonable and just' rate or service, but merely to determine whether the order of the commission is 'unreasonable'—quite a different thing. We think the legislature was within its power in conferring upon the courts such authority to inquire whether or not the order of the commission was unreasonable and to vacate the order if so found. In doing so the courts are required to exercise no legislative power, to ascertain and disclose no rates, to declare no rule or no law unreasonable, but merely to exercise judicial power to ascertain and determine whether the commission has so far failed in its search for this lawful, just, and rea-

sonable rate as to have found instead, and declared, that which is unreasonable. The result of the reversal of the order of the commission is not to establish this fact or ascertain this point of reasonableness, but to leave it undisclosed, leaving the former rates to stand or requiring the commissioners to try over again to find it. In reviewing the order of the railroad commission the inquiry is not whether the rate, regulation, or service fixed by the commission is just and reasonable, but whether the order of the commission is unreasonable or unlawful. The nature of the inquiry is changed at this point, and the court is not investigating for the purpose of establishing a fixed point. Whether or not the order is within the field of reasonableness, or outside of its boundaries, is the question for the court. It is quite a different question from that which was before the commission in this respect. The order, being found by the court to be such that reasonable men might well differ with respect to its correctness, cannot be said to be unreasonable. From this aspect it is within the domain of reason, not outside of its boundaries. This is the viewpoint of the reviewing court. Doubtless the court may, for the purpose of comparison and to aid it in ascertaining how far the order diverges from a reasonable standard, take evidence of and consider such criterion. But this is only for comparison. The court cannot legally adjudicate or declare this statutory standard.

"Unless the plaintiff is able to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be, the order must stand. The words 'clear and satisfactory evidence' are significant, because at the time of the enactment of this statute they were used in the law of this state to describe a degree of proof greater than a preponderance of evidence and such as was necessary in order to establish fraud by that party to an action upon whom the burden of proof rested [citing authorities]."

4.. A finding without evidence or against the evidence is arbitrary and beyond the power of the commission; and an order based thereon is contrary to law and subject to be set aside by a court of competent jurisdiction. "In a case like the present, the courts will not review the commission's conclusions of fact * * by passing upon the credibility of witnesses or conflicts in the testimony. But the legal effect of the evidence is a question of law": *Interstate Commerce Commission* v. *Louisville etc. R. R. Co.*, 227 U. S. 88 (57 L. Ed. 431, 33 Sup. Ct. Rep. 185, see, also, Rose's U. S. Notes). In *Public Service Commission of Indiana* v. *Cleveland etc. Ry. Co.* (Ind.), 121 N. E. 116, it is held in a suit to set aside the findings of the commission that on appeal to the Supreme Court the decision of the trial court will be approved if there is any evidence to sustain it: See, also, *Hocking Valley Ry. Co.* v. *Public Utilities Commission of Ohio,* 92 Ohio St. 9, 362 (110 N. E. 521, 952, Ann. Cas. 1917B, 1154, L. R. A. 1918A, 267).

5. The reasonableness of the rate is the only justiciable question in contentions of this sort, and the court will not assume the place of the commission or set its order aside on the court's conception of its wisdom: *State* v. *Great Northern Ry. Co.*, 130 Minn. 57 (153 N. W. 247, Ann. Cas. 1917B, 1201); 135 Minn. 19 (159 N. W. 1089), was a case where the commission was called upon to require the defendant company to construct a new depot at Ada, a station on its lines. In speaking of the rules and orders made by the commission, the court said:

"The making of such regulations is a legislative or administrative, and not a judicial, function. The reasonableness of such an order is, however, a judicial question. The court may review the orders of

the commission, but only so far as to determine whether they are reasonable. The order may be vacated as unreasonable if it is contrary to some provision of the federal or state Constitution or laws, or if it is beyond the power granted to the commission, or if it is based on some mistake of law, or if there is no evidence to support it, or if, having regard to the interest of both the public and the carrier, it is so arbitrary as to be beyond the exercise of a reasonable discretion and judgment. * * The court does not consider the wisdom or expediency of the order. The court ascribes to the findings of the commission 'the strength due to the judgments of a tribunal appointed by law and informed by experience,' and its conclusion, when supported by substantial evidence, is accepted as final.''

"If the conclusion arrived at by the commission finds justification in the testimony, this court will not substitute its judgment for that of the commission": *Grand Rapids etc. Ry. Co.* v. *Michigan Railroad Commission,* 188 Mich. 108 (154 N. W. 15).

This is the manifest substance and effect of our own statute; for the suit is authorized, not to make new rates, but only to set aside those established by the order of the commission. In brief, the function of the court is, in a sense, to review the proceedings of the commission and to ascertain if it has violated any principle of law or gone beyond the scope of its duty in making the order. However much the judges hearing the case at any stage of the judicial proceedings might differ on the conclusion of the commission, as to its wisdom or as to its determination of any pure question of fact, the courts must respect the decision of the commission, if it has not departed from the scope of its authority established by the legislative power of the state.

6. The case was tried in the Circuit Court solely on the testimony taken before the commission. Neither the objectors, plaintiffs here, nor the Railroad Company, tendered any additional testimony. The principal grievance voiced by the plaintiffs is that the commission considered as one of the elements, in making up the rates which the Railroad Company was entitled to charge, the amortization of the reasonable value of the plant of the company, and as incidental to that reckoned the discount upon the bonds of the company, which it sold at 5 per cent less than par to obtain funds with which to build the road. It is contended by plaintiffs that all the shipper is required to pay is for carriage of its products, a sufficient amount to cover a reasonable rate of interest on the value of the plant employed in the carriage. For the defendant it is maintained that the company, as time goes on, is entitled to charge such a rate as will not only afford a fair return of interest on the value of the plant, but will provide for and absorb the depreciation of the property under all the circumstances of the particular case. The carrier devotes its private property to public service, but it is none the less on that account within the protection of the Constitution that such property shall not be taken for public use, nor the particular services of any man demanded, without just compensation: Oregon Const., Art. I, § 18. Thus to devote its property means that it gives to the public the right or option to demand its service or the use of its property, but this is always subject to the condition of just compensation Neither the public nor any of its component parts is compelled to exercise this right or option, but if it is exercised, it can be only under the attendant constitutional condition. It is said that a shipper should

not be compelled to buy the company's railroad. But it is equally true in principle that the company is entitled to such rates as will fairly compensate it for the services rendered and for depreciation of its plant employed in such service, even though it reaches the vanishing point. In other words, the company ought to be allowed to come out even, in an undertaking which may reasonably be expected to exhaust itself, and besides quitting whole, to receive a fair compensation for its services. The carrier ought not to be compelled to sacrifice its plant and be content merely with compensation amounting only to interest on its value. To ignore this principle would be to violate the constitutional inhibition already quoted. A public service corporation cannot be expected to sacrifice its property for the public good. Nor is it bound to see its property gradually wasted by wear and decay without making provision for its replacement. It is entitled to earn enough not only to meet the expenses of current repairs, but also to provide means for replacing the parts of the plant when these can no longer be used: *Cedar Rapids Gaslight Co.* v. *Cedar Rapids,* 144 Iowa, 426 (120 N. W. 966, 138 Am. St. Rep. 299, 48 L. R. A. (N. S.) 1025). The whole subject involved in this litigation is ably and exhaustively treated in the note to *Kansas City S. Ry. Co.* v. *United States,* 231 U. S. 423 (58 L. Ed. 296, 52 L. R. A. (N. S.) 1, 34 Sup. Ct. Rep. 125).

There was testimony before the commission to the effect that almost the only freight that could be carried by the Railroad Company consisted of the logs cut from the timber in a restricted section in Columbia County, amounting to about 2,000,000,000 feet, and that when this was exhausted the plant of the company would have only a scrap value. In other words,

aside from the junk value of the plant, it would perish in the using. The doctrine that the shipper should be required to pay such a rate as would not only yield a reasonable return on the value of the property, but also provide for absorbing its depreciation, is abundantly established in cases involving roads which are permanent in their character and which may reasonably be expected to have a flourishing traffic perpetually, or at least as long as carriage by railroad shall continue in vogue. The precept is equally applicable to a road the activity of which is circumscribed by the fact that freight available for it will be exhausted in the near future. The principle is the same, and the two cases differ only in the degree and rapidity of depreciation. A fully equipped railroad, built on a circle with a radius of a hundred miles from the North Pole would be, at the present day, utterly valueless. There would be no traffic for it and nothing to use it for. Differing only in degree would be a railroad running into a logged-off barren where there was nothing for it to haul and no use to which it could be put. There was testimony from which the commission could arrive at the conclusion that this would be the fate of the railroad here involved, in the near future. It was within the scope of the commission's authority to establish such a rate as would amortize this depreciation, as well as to yield to the carrier a fair return for its services. To hold otherwise would be to say that when an individual or corporation devotes property to public uses it amounts to a voluntary sacrifice or thank-offering on the public altar. Under our Constitution no such gratuity is contemplated. In proper cases under the law of eminent domain the public may condemn and take the property of a private concern, of

course accompanied by an award of just compensation. The individual may voluntarily devote his property to the public service, without awaiting condemnation, granting to the public the option of taking it and using it, but only on the condition that such remuneration shall be afforded as will enable the individual to come out even.

Objection is made also to the effect that the commission had no right to consider the discount suffered by the bonds of the company in the market in the endeavor to raise the funds necessary to complete the road. It is by no means clear that the commission included this in making up the valuation of the road. It is true that in the report or decision of the commission the various elements accompanying the construction of the road are tabulated, wherein appears an item grouped with others, of interest during construction. In giving a history of the undertaking, the sale of the bonds is narrated, and in winding up the table of all the items the value of the investment on January 1, 1918, is fixed at $1,373,778.79. But after considering all of the situation, the commission fixed the value of the property, for rate-bearing purposes, at $1,263,883, making a difference in the way of deduction of $109,895.79. This more than covers all the discount in any way connected with the undertaking, which is shown to be $61,037.50. It is enough to say on this branch of the case that the plaintiffs have not shown that in making up the value of the property for rate-making purposes the commission included anything whatever for discount on bonds. In other words, the plaintiffs have not made out their case on that point. The statute under which they proceed now declares that:

"In all trials under this section, and sections 6911, 6912 and 6913 hereof, the burden of proof [shall] be upon the plaintiff to show by clear and satisfactory evidence that the order of the commission complained of is unlawful, or unreasonable, as the case may be": Section 6910, L. O. L.

7. We might well rest here, but, as to interest on the investment, it seems that a reasonable rate should be allowed from the beginning of the under-taking. It is fair compensation for the use of the money, and it matters not whether that is paid directly to the company or is passed on to the one from whom the company borrows the money. If the charge is reasonable, it ought to be allowed. It is quite a different thing from allowing a return on what is colloquially known as "watered stock." No carrier is entitled to a return upon fictitious or inflated values, and this is the principal evil against which rate-making legislation and laws establishing public service commissions have been directed. The intent of the law is to allow a fair compensation based upon fair and reasonable value of the service and the utilities employed. The bench-mark to which the rates are referable is the reasonable value of the plant, which includes all of the elements of fair and reasonable expense in establishing it, qualified, of course, by the depreciation which has already occurred.

In *Chicago & N. W. Ry. Co.* v. *Railroad Commission,* 156 Wis. 47 (145 N. W. 216, 974), it was held, in substance, that the reference by the commission in its decision to extraneous matters does not necessarily mean that it has reached a conclusion without evidence. And in *State* v. *Public Service Commission of Washington,* 76 Wash. 492 (136 Pac. 850), it

is taught that the commission has a right to supplement evidence offered by the parties with an inquiry on its own motion, and when so doing is not acting judicially. These cases and others like them dispose of the minor contention of the plaintiffs, urged in their complaint but not insisted upon in their brief, that the commission considered a personal examination of the railroad by one member of the board. The commission is charged, as stated, with statutory duties closely allied to the legislative power of the state. In very truth, it is a part of the co-ordinate branch of the government, with the duties of which the judicial part of the fabric may not interfere, except as already stated, to wit, upon the judicial questions involved.

8. The plaintiffs have not maintained the burden of proof of showing that the commission exceeded its powers or acted in violation of any principle of law. Moreover, in the very nature of things, the factors involved in an inquiry of this kind are so many and so variable that it is impossible to fix rates that will be mathematically correct or exactly applicable to all the new conditions that may arise even in the immediate future. In practice, it is reasonable and just in most instances to give the rates in question a fair trial under actual operation. This is the teaching of *Darnell* v. *Edwards,* 244 U. S. 564 (61 L. Ed. 1317, 37 Sup. Ct. Rep. 701), a leading case cited by the plaintiffs: See, also, *Lincoln G. & E. Co.* v. *Lincoln,* 250 U. S. 256 (63 L. Ed. 968, 39 Sup. Ct. Rep. 454). Besides all this, the establishment of a given rate sheet is not absolutely final and conclusive for all time; for new conditions may arise to-morrow which will make unreasonable, one way or the other, a rate which to-day is just and fair. The whole

matter is continually under the scrutiny of the commission, in the exercise of a flexible administrative authority, and can be reopened at any time, either on its own motion or on the petition of interested parties: Section 6906, L. O. L.

For the reasons stated, we are constrained to respect the commission's decision and to affirm the decree of the Circuit Court, without prejudice to renewed inquiry hereafter as the commission may be advised.            AFFIRMED.    REHEARING DENIED.

McBRIDE, C. J., and BENNETT and JOHNS, JJ., concur.

---

Argued May 3, affirmed May 25, rehearing denied June 29, 1920.