## SMITH ET AL v. CAMERON ET AL.

(210 Pac. 716.)

**Eminent Domain—Prohibition of Federal Constitution Against Taking Private Property for Public Use Without Just Compensation Restrains Congress, but not State Legislatures.**

1. United States Constitution, Amendment 5, declaring that private property shall not be taken for public use without just compensation, is a restraint upon Congress, but not upon state legislatures.

**Constitutional Law—Due Process Clause of United States Constitution Restrains State Legislation as Well as Congress.**

2. The due process clause of United States Constitution, Amendment 14, is a restraint upon state legislation as well as Congress.

**Constitutional Law—Eminent Domain—Due Process Clause of Federal Constitution not Violated by Statute Authorizing Enlarging of Existing Irrigation Ditch for Private Use by Parties not Its Owners.**

3. The due process clause of United States Constitution, Amendment 14, is not violated by Section 5720, Or. L., giving private parties right to condemn and enlarge an existing irrigating ditch belonging to others for purpose of bringing water also to condemnors' land, where those exercising this right have no other practicable ditch route than one paralleling the existing ditch and traversing the same lands.

**Eminent Domain—Inherent in Sovereignty, and not Dependent upon Constitutional Grant.**

4. The power of eminent domain is inherent in sovereignty, and not dependent upon constitutional grant.

106 Or.—1        (1)

Eminent Domain—State Constitutional Provision Against Taking of Private Property for Public Use Without Compensation is Implied Prohibition Against Taking Private Property for Private Use.

5. Constitution, Article I, Section 18, prohibiting the taking of private property for public use without just compensation, is an implied prohibition against taking of private property for private use.

Eminent Domain—Statute, Declaring General Distribution of Water is Public Use, Held to Contain No Assertion That Use by Individual is Public Use.

6. Section 5777, Or. L., declaring a general distribution of water for irrigation, is a public use, and that a use shall be deemed general when the water shall be supplied to all persons whose lands lie adjacent to the irrigating ditch, contains no assertion that use by particular individuals is a public use.

Constitutional Law—Statute Declared Unconstitutional Only Where Clearly So.

7. The courts will declare a statute void where its constitutional repugnancy is clear, but not where a reasonable doubt exists.

Eminent Domain—Ultimate Question of Constitutional Violation in That Statute Grants a Taking for Private Use is for The Courts.

8. Where constitutionality of a statute granting power of eminent domain is questioned, the courts will indulge the presumption that the use involved is public if the legislature so declares, but the ultimate question whether there is a constitutional violation, in that the taking is in fact for private use, is for the courts.

Eminent Domain—"Use" and "Public Use" Defined—"Public Benefit."

9. There are two main lines of judicial decisions, one that the word "use" is to be taken in its primary sense of meaning "employment," and the other holding the word means "advantage," and applying this secondary meaning, some courts have held that "public use" is synonymous with "public benefit."

Eminent Domain—That Private Persons Employ Many Persons and Produce in Large Quantity Does not Necessarily Create "Public Use."

10. "Public use" is not synonymous with "public benefit," and that private enterprises employ many persons and produce in large quantities does not necessarily create a public use, and this term as used in the state Constitution means "use by the public."

---

9. What constitutes public use for which property may be taken, see notes in 102 Am. St. Rep. 813; 2 Ann. Cas. 50; 3 Ann. Cas. 1113; 4 Ann. Cas. 1175; 14 Ann. Cas. 903; Ann. Cas. 1912D, 1002; Ann. Cas. 1918A, 203.

Waters and Watercourses—No Statutory Authority for Condemnation and Enlargement of Existing Irrigating Ditch to Accommodate Use by Other Particular Individuals.

11. Constitution, Article I, Section 18, prohibiting by implication a taking of private property for private use, is not violated by Section 5719, Or. L., providing for condemnation of lands for irrigating ditches by private parties, or Section 5720, giving private parties right to condemn and enlarge an existing irrigating ditch belonging to others to bring water also to condemnors' lands, inasmuch as these sections contain no authority for condemnation and enlargement of an existing ditch, notwithstanding it occupies the only practicable route to condemnors' lands, where condemnors contemplate only irrigation of their individual lands and there is to be no general use by all adjacent owners.

From Jackson: F. M. CALKINS, Judge.

Department 1.

The plaintiffs Ed Smith and Silas Smith brought this action against the defendants, Frank Cameron and seven other persons in an attempt to exercise the power of eminent domain, and thus obtain the right to enlarge an irrigation ditch known as "The Farmers Ditch" and owned and in the possession of the defendants as tenants in common. The ditch extends from the Little Applegate River to lands owned by the defendants. Water is taken from the river and conveyed through the ditch to the lands owned by the defendants and is there used for irrigation.

The plaintiffs own 160 acres of land. "The Farmers Ditch" extends "on, to, and through" the land owned by the plaintiffs. Upon the application of the plaintiffs the state engineer on May 5, 1917, granted them a permit to appropriate a specified quantity of the waters of the Little Applegate River for the irrigation of their land.

The plaintiffs sought to acquire from the defendants the right to enlarge "The Farmers Ditch" and to use it for carrying the water which they are permitted to divert from the river for the irrigation of.

their 160 acres of land, offering to pay for the right and also offering to agree to pay their *pro rata* part of the expense of maintaining the ditch. The plaintiffs wish to connect with "The Farmers Ditch" at a specified point below its intake and from that point convey their water through "The Farmers Ditch" to their land. The complaint alleges, among other things, that the land of plaintiffs

"above described is semi-arid in character, and will not profitably produce without artificial irrigation, but that with artificial irrigation the same will produce abundantly of grain, vegetables, fruit and hay."

The plaintiffs further aver in their complaint:

"That there is no way by which these plaintiffs could convey the waters of Little Applegate River to which they are entitled as aforesaid, from said Little Applegate River to the lands of the plaintiffs above described, except through said ditch, or through a ditch substantially parallel therewith, and over and across the lands of a considerable number of land owners which lands are now traversed by the defendants' said ditch."

The plaintiffs refused to plead further after the trial court sustained a demurrer to the complaint, and they appealed from the consequent judgment rendered against them.                    AFFIRMED.

For appellants there was a brief and oral argument by *Mr. Porter J. Neff*.

For respondents there was a brief and oral argument by *Mr. Gus Newbury*.

HARRIS, J.—The defendants contend, and apparently the trial court decided, that to permit the plaintiffs to condemn the right to enlarge "The Farmers Ditch" so that they could convey their share of water

through it would be to take private property for a private use. It is conceded that "The Farmers Ditch" is private property owned by private persons; and so the only question for decision is whether in the attending circumstances the enlargement and use of "The Farmers Ditch" by the two plaintiffs for the irrigation of their tract of land would be for private or for a public use. The plaintiffs insist that they are authorized to exercise the power of eminent domain by Section 5720, Or. L., which reads as follows:

"§ 5720. Right to Enlarge Existing System. When the United States, the state, or any person, firm or corporation desires to convey water for irrigation, drainage or for any other beneficial purpose, and there is a canal or ditch already constructed that can be enlarged to convey the required quantity of water, then the United States, the state, or any such person, firm or corporation, or the owner or owners of the land through which a new canal or ditch would have to be constructed to convey the quantity of water necessary, shall have the right to enlarge said canal or ditch already constructed, by compensating the owner of the canal or ditch to be enlarged for the damages, if any, caused by said enlargement; provided, that said enlargement may be made at any time between the first day of October and the first day of March, but not any other time, unless upon agreement in writing with the owner or owners of said canal or ditch."

In connection with Section 5720, Or. L., one should also examine Section 5719, Or. L., which, so far as material here, reads thus:

"§ 5719. Eminent Domain. The United States, the state, or any person, firm or corporation, shall have the right of way across and upon public, private and corporate lands or other rights of way, for the construction, maintenance, repair and use of all necessary reservoirs, dams, water gates, canals, ditches, flumes, tunnels or other means of securing,

storing and conveying water for irrigation or for drainage, or any other beneficial purpose, upon payment of just compensation. therefor. * * Such right may be acquired in the manner provided by law for the taking of private property for public use.''

The defendants are private owners of lands. The ditch owned by the defendants is private property used by private persons for irrigating their own and no other lands. The plaintiffs are private persons and own private land; and they are attempting to condemn the right to enlarge the ditch owned by the defendants, and thus to take the private property of the defendants in order to irrigate their own and no other land.

The language employed in Sections 5719 and 5720, Or. L., is general and comprehensive; and, although it is not specifically declared, as has been done by statute or by constitutional provision in a few jurisdictions, that a private owner of land may condemn a right of way for conveying water to be used on his and no other land, and although there may be room to doubt whether the legislature intended that Sections 5719 and 5720 should apply to a situation like the one presented here, Section 5720, Or. L., is probably sufficiently broad in its terms to include such an owner; and we shall therefore assume that the legislature intended by the enactment of Section 5720 to permit persons in the situation of the plaintiffs to condemn the right to enlarge a ditch owned by and in the possession of persons in the situation of the defendants. A statute as comprehensive as we assume Section 5720, Or. L., to be is entirely valid unless Article I, Section 18 of our state Constitution is an interposing obstacle.

1. The fifth amendment to the United States Constitution declaring that private property shall not be

taken for public use without just compensation is a restriction upon Congress and not upon state legislatures: 20 C. J. 532; 10 R. C. L. 16.

2, 3. State legislation is, however, subject to the due process of law clause in the fourteenth amendment to the federal Constitution; but this provision of the federal Constitution is not violated by a state statute permitting the condemnation of land in circumstances like those presented here; and, consequently, whether Article I, Section 18, of our state Constitution permits or prevents the plaintiffs from condemning a right to enlarge the defendant's ditch is, in the language of the Supreme Court of the United States, "a local affair": *Strickley* v. *Highland Boy Gold Mining Co.*, 200 U. S. 527, 531 (4 Ann. Cas. 1174, 50 L. Ed. 581, 26 Sup. Ct. Rep. 301, see, also, Rose's U. S. Notes); *Clark* v. *Nash*, 198 U. S. 361 (49 L. Ed. 1085, 25 Sup. Ct. Rep. 676, 4 Ann. Cas. 1171).

Article I, Section 18, of our state Constitution as amended in 1920 reads as follows:

"Private property shall not be taken for public use, nor the particular services of any man demanded without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; *provided, that the use of all roads and ways necessary to promote the transportation of the raw products of mine or farm or forest is necessary to the development and welfare of the state and is declared a public use.*"

For convenience that portion which was added to Article I, Section 18, by the amendment of 1920 is italicized. That part of Section 18 which precedes the italicized words is exactly as it was originally adopted, except that the amendment of 1920 omitted the word "be" previously found after the word

"man." It is appropriate to explain that the amendment resulted from the decision rendered in *Anderson* v. *Smith-Powers Logging Co.,* 71 Or. 276 (139 Pac. 736, L. R. A. 1916B, 1089); and it is worthy of notice that the amendment is limited to "roads and ways necessary to promote the transportation of raw products of mine or farm or forest."

4. The power of eminent domain is inherent in sovereignty and exists in a sovereign state without any recognition of it in the Constitution. The power of eminent domain does not depend for its existence upon a grant in the Constitution: 10 R. C. L. 11. It exists independent of constitutional provisions. It is not conferred by a Constitution although it may be recognized or limited by a Constitution: 20 C. J. 516. The language "private property shall not be taken for public use * * without just compensation," is the familiar language of most of the state Constitutions, and is a limitation upon the power of eminent domain.

5. A few state Constitutions contain an express prohibition against taking private property for a private use. But the language of most of the Constitutions, including the federal Constitution, is either the same as or equivalent to the language appearing in our Constitution; and it is uniformly held that such language prohibits the taking of private property for a private use: *Dalles Lumbering Co.* v. *Urquhart,* 16 Or. 67, 69 (19 Pac. 78); *Bridal Veil Lumbering Co.* v. *Johnson,* 25 Or. 105, 108 (34 Pac. 1026); *Fanning* v. *Gilliland,* 37 Or. 369, 373 (61 Pac. 636, 62 Pac. 209, 82 Am. St. Rep. 758); *Towns* v. *Klamath County,* 33 Or. 225 (53 Pac. 604); *Grande Ronde Electrical Co.* v. *Drake,* 46 Or. 243, 247 (78 Pac. 1031); *Apex Transp. Co.* v. *Garbade,* 32 Or. 582,

587 (52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513);
*Arnsperger* v. *Crawford,* 101 Md. 247 (61 Atl. 413,
70 L. R. A. 497); *Richmond* v. *Carneal,* 129 Va. 388
(106 S. E. 403, 14 A. L. R. 1341).   The legislature
cannot take one man's property and give it to an-
other: *Gaston* v. *Portland,* 48 Or: 82, 88 (84 Pac.
1040); *Witham* v. *Osburn,* 4 Or. 318, 322 (18 Am. Rep.
287); *Bloodgood* v. *M. & H. R. R. Co.,* 18 Wend.
(N. Y.) 9 (31 Am. Dec. 316).   In *Wilkinson* v. *Leland,*
2 Pet. (U. S.) 658 (7 L. Ed. 542, see, also, Rose's
U. S. Notes), the court, speaking through Mr. Jus-
tice STORY, said:

"We know of no case in which a legislative act to
transfer the property of A to B without his consent
has ever been held a constitutional exercise of legis-
lative power in any state in the Union."

Under our Constitution "the private property of
the citizen cannot be taken against his will for any
purpose other than a public use": *Branson* v. *Gee,*
25 Or. 462, 466 (36 Pac. 527, 24 L. R. A. 355).   See
also *Pennsylvania Mutual Life Ins. Co.* v. *Philadel-
phia,* 242 Pa. 47 (88 Atl. 904, 49 L. R. A. (N. S.)
1062).

6. If it is assumed, as we do, that the legislature
intended to enable a person situated as the plaintiffs
are to condemn the right to enlarge a privately owned
ditch so that he can convey water through it for the
irrigation of his own land only, then it is fair to
say that the legislature has impliedly declared that
a taking of private property for such use is a taking
for a public use.   However, it is a noteworthy fact that
Section 5720, Or. L., involves only an implied decla-
ration, while Section 5777, Or. L., involves an ex-
press declaration that the use of water "for general
rental, sale or distribution, for purposes of irri-
gation, and supplying water for household and

domestic consumption, and watering livestock upon dry lands of the state, is a public use"; and, furthermore, it is highly significant that this section defines the word "general" by declaring that—

"a use shall be deemed general within the purview of this act when the water appropriated shall be supplied to all persons whose lands lie adjacent to or within the reach of the line of the ditch or canal or flume in which said water is conveyed, without discrimination other than priority of contract, upon payment of charges therefor, as long as there may be water to supply."

Section 5777, Or. L., does not pretend to assert that use by a particular individual is itself a public use. And so, too, Section 5789, Or. L., expressly declares that the use of water for mining and electrical power is a public use.

7. The general rule is that courts approach with hesitancy the question of declaring a statute unconstitutional, and so long as a reasonable doubt exists a statute will not be held to be in contravention of the Constitution. The courts will declare a statute void when its repugnancy to the Constitution is clear, palpable and free from reasonable doubt: *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263, 13 L. R. A. 533). The courts will always treat the decision of the legislative department with the consideration which is due a co-ordinate department of the government; and the courts will always enter upon an inquiry concerning the validity of a statute authorizing the exercise of the power of eminent domain with the presumption that a use is public if the legislature has declared it to be such: 10 R. C. L. 29. See also *State* v. *Hawk,* 105 Or. 319 (208 Pac. 709).

8. While it is true that the judicial department will accord to a co-ordinate department the consideration

due it, and will attach to a legislative declaration the presumption mentioned, nevertheless, the question whether the constitutional provision prohibiting the taking of property for a private use has been violated is, like all constitutional questions, ultimately for the court. The legislature cannot by its mere fiat transform into a public use that which is in truth a private use. In the language of *Richmond* v. *Carneal,* 129 Va. 388 (106 S. E. 403, 14 A. L. R. 1341), "the legislature cannot conclude the constitutionality of its own enactments." As the Pennsylvania court expressed it:

"Whether it be expedient or wise for the legislature to exercise this authority to take property for public use, * * is purely a political question, and one solely for the legislature. But whether the use to which it is sought to appropriate the property authorized to be taken is a public use is a judicial question for the determination of the courts."

*Philadelphia M. & S. Street R. Co.'s Petition,* 203 Pa. 354, 362 (53 Atl. 191). See also *Pennsylvania Mutual Life Ins. Co.* v. *Philadelphia,* 242 Pa. 47 (88 Atl. 904, 49 L. R. A. (N. S.) 1062), and *Richmond* v. *Carneal,* 129 Va. 388 (106 S. E. 403, 14 A. L. R. 1341). A concise statement of the line of demarcation which separates the judicial and legislative functions appears in *Apex Transp. Co.* v. *Garbade,* 32 Or. 582, 587 (52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513), where it was said:

"The necessity and expediency of taking private property for public use is a legislative question; but whether the proposed use is in fact public is always a judicial question, to be determined by the courts."

*Bridal Veil Lumbering Co.* v. *Johnson,* 30 Or. 205, 209 (46 Pac. 790, 60 Am. St. Rep. 818, 34 L. R. A. 368); *Fanning* v. *Gilliland,* 37 Or. 369, 374 (61 Pac.

636, 62 Pac. 209, 82 Am. St. Rep. 758); *Dallas* v. *Hallock,* 44 Or. 246, 252 (75 Pac. 204); *Grande Ronde Electrical Co.* v. *Drake,* 46 Or. 243, 248 (78 Pac. 1031); *State* v. *Hawk,* 105 Or. 319 (208 Pac. 709, 712).

9. It is difficult, and probably impossible, to frame such a definition of the term "public use" employed in Constitutions as will include all adjudications where controverted uses have been held public and at the same time exclude all those uses where it has been ruled that the disputed uses were private. It has been frequently stated that it is easier to define public use by negation rather than by affirmation: *Apex Transp. Co.* v. *Garbade,* 32 Or. 582, 587 (52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513). Lexicographers give to the word "use" a primary and a secondary meaning. On the one hand, the word "use" may signify

"the act of employing anything, or the state of being employed; employment, application; conversion to a purpose, especially a profitable purpose."

On the other hand, it may mean

"that property of a thing which renders it suitable for a purpose; adaptability to the attainment of an end; usefulness; availability; utility; serviceableness; service; convenience; help; profit; as, a thing of use." Century Dictionary (Revised Edition).

There are two main lines of judicial decisions; one holding that the word "use" is to be taken in its primary sense and that when so taken it means, stated briefly, "employment"; the other holding that the word should be given its secondary meaning and that when so applied it means, stated briefly, "advantage": 1 Lewis on Eminent Domain (3 ed.), § 252; 20 C. J. 552; *Pennsylvania Mutual Life Ins. Co.* v.

*Philadelphia,* 242 Pa. 47 (88 Atl. 904, 49 L. R. A.
(N. S.) 1052).   While it has been said that a third line
of decisions occupying a middle ground may be found,
nevertheless the considerable majority of the cases
must be classified with one or the other of the two
main lines of decisions.   Under the authority of that
line of decisions which gives to the word "use" its
secondary meaning, some courts have gone to the
extent of holding that "public use" is synonymous
with "public benefit," "public utility" or "public
advantage."   Striking illustrations of this view are
furnished by the following precedents: *Nash* v. *Clark,*
27 Utah, 158 (75 Pac. 371, 101 Am. St. Rep. 953,
1 Ann. Cas. 300, 1 L. R. A. (N. S.) 208); affirmed in
*Clark* v. *Nash,* 198 U. S. 361 (4 Ann. Cas. 1171, 49
L. Ed. 1085, 25 Sup. Ct. Rep. 676, see, also, Rose's
U. S. Notes); *Highland Boy Mining Co.* v. *Strickley,*
28 Utah, 215 (78 Pac. 296, 107 Am. St. Rep. 711,
3 Ann. Cas. 1110, 1 L. R. A. (N. S.) 956); affirmed
in *Strickley* v. *Highland Boy Gold Mining Co.,* 200
U. S. 527 (4 Ann. Cas. 1174, 50 L. Ed. 581, 26 Sup
Ct. Rep. 301); *Oury* v. *Goodwin,* 3 Ariz. 255 (26 Pac.
376); *Ellinghouse* v. *Taylor,* 19 Mont. 462 (48 Pac.
757); *Dayton Mining Co.* v. *Seawell,* 11 Nev. 394.
These authorities go upon the theory that where one
of the natural resources of a state is of such magnitude
that its development will very materially contribute to
the general welfare, then whatever is necessary, because
of climatic or soil conditions and the like, to make it
possible to accomplish such development may be a pub-
lic use.   The result capable of being attained determines
the nature of the use.   For example, in Utah where
there is so much arid land a person situated as the
plaintiffs are in the instant case can condemn the
right to enlarge another man's ditch so that the con-

demnor can carry through the enlarged ditch water which he has appropriated for the irrigation of his and no other person's land. The same doctrine prevails in Montana. Utah is rich in minerals, and so it has been held that the owner of a quartz mine can condemn the right to maintain an aerial tramway over placer ground owned by another, notwithstanding the tramway is to be used for no purpose whatever except to carry ores from the mine to the smelter and to convey to the mine whatever is needed for its operation. A similar doctrine prevails in Nevada.

10. The courts, including this court, which take the opposing view assert that there is a distinction between a public use and a benefit to the public, and that private enterprises that give employment to many people and produce large quantities of commodities of various kinds are not necessarily public uses; and that the term "public use" as used in Constitutions is not synonymous with the term "public benefit": *Anderson* v. *Smith-Powers Logging Co.*, 71 Or. 276, 294 (139 Pac. 736, L. R. A. 1916B, 1089); *Richmond* v. *Carneal*, 129 Va. 388 (106 S. E. 403, 14 A. L. R. 1341); *State ex rel. Harris* v. *Superior Court*, 42 Wash. 660 (85 Pac. 666, 7 Ann. Cas. 748, 5 L. R. A. (N. S.) 672); *Neitzel* v. *Spokane International R. Co.*, 65 Wash. 100 (117 Pac. 864, 36 L. R. A. (N. S.) 522); *Healy Lumber Co.* v. *Morris*, 33 Wash. 490 (47 Pac. 681, 99 Am. St. Rep. 964, 63 L. R. A. 820); *Arnsperger* v. *Crawford*, 101 Md. 247 (61 Atl. 413, 70 L. R. A. 497). The idea emphasized by this main line of decisions is expressed by Judge COOLEY thus:

"The public use implies a possession, occupation, and enjoyment of the land" by the public or public agencies, and it is not enough "that the public would receive incidental benefits, such as usually spring from the improvement of lands or the establishment

of prosperous private enterprises." Cooley's Constitutional Limitations (7 ed.), 766.

This dominating idea has been variously expressed. In *Bloodgood* v. *M. & H. R. R. Co.,* 18 Wend. (N. Y.) 9 (31 Am. Dec. 313, 356), it is said:

"When we depart from the natural import of the term 'public use,' and substitute for the simple idea of a public possession and occupation that of public utility, public interest, common benefit, general advantage or convenience, or that still more indefinite term public improvement, is there any limitation which can be set to the exertion of legislative will in the appropriation of private property?"

In *Healy Lumber Co.* v. *Morris,* 33 Wash. 490, 509 (74 Pac. 681, 99 Am. St. Rep. 964, 63 L. R. A. 820), appears the following language:

"The use under consideration must be either a use by the public, or by some agency which is *quasi*-public, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity of the state."

In *Borden* v. *Trespalacios Rice & Irr. Co.,* 98 Tex. 494 (86 S. W. 11, 107 Am. St. Rep. 640, 648), the court held:

"Property is taken for public use as intended by the Constitution only when there results to the public some definite right or use in the business or undertaking to which the property is devoted. And we further agree that this public right or use should result from the law itself and not be dependent entirely upon the will of the donee of the power."

In *Richmond* v. *Carneal,* 129 Va. 388 (106 S. E. 403, 14 A. L. R. 1341, 1347), the court said:

"Different courts sometimes arrive at different conclusions upon the same state of facts; but, whenever the remedy is applied, it should always be because there is a direct 'public use' of the property

taken, and not a mere incidental or indirect public benefit.''

To the same effect are *Alfred Phosphate Co.* v. *Duck River Phosphate Co.,* 120 Tenn. 260 (113 S. W. 410, 22 L. R. A. (N. S.) 701); *Pennsylvania Mutual Life Ins. Co.* v. *Philadelphia,* 242 Pa. 47 (88 Atl. 904, 49 L. R. A. (N. S.) 1062); *Neitzel* v. *Spokane International R. Co.,* 65 Wash. 100 (117 Pac. 864, 36 L. R. A. (N. S.) 522). In Lewis on Eminent Domain, (2 ed.), Section 165, we read as follows:

''The use of a thing is strictly and properly the employment or application of the thing in some manner. The public use of anything is the employment or application of the thing by the public. Public use means the same as use by the public, and this it seems to us is the construction the words should receive in the constitutional provision in question. The reasons which incline us to this view are: First, that it accords with the primary and more commonly understood meaning of the words; second, it accords with the general practice in regard to taking private property for public use in vogue when the phrase was first brought into use in the earlier Constitutions; third, it is the only view which gives the words any force as a limitation or renders them capable of any definite and practical application.

''If the Constitution means that private property can be taken only for use by the public, it affords a definite guide to both the legislature and the courts. Though the property is vested in private individuals or corporations, the public retain certain definite rights to its use or enjoyment, and to that extent it remains under the control of the legislature. If no such rights are secured to the public, then the property is not taken for public use and the act of appropriation is void. This interpretation will cover every case of appropriation that has been deemed lawful by any court, except a few in relation to mills, mines and drainage. If exceptional circumstances require exceptional legislation in those respects in any state,

it is very easy to provide for it specially in the Constitution, as has been done in several states."

Courts have approvingly quoted the foregoing extended excerpt taken from Lewis on Eminent Domain more frequently than any other excerpt from any other author writing upon the subject of eminent domain except Judge COOLEY. In *Anderson* v. *Smith-Powers Logging Co.,* 71 Or. 276, 292 (139 Pac. 736, L. R. A. 1916B, 1089), this court quoted the excerpt taken from Lewis on Eminent Domain and approved it as a statement of the correct doctrine, and it was also approved in *Apex Transp. Co.* v. *Garbade,* 32 Or. 582, 587 (52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513). At an early date this court called attention to the difference between the views held by different courts. But upon every occasion this court has rejected the notion that "public benefit" means "public use" and has taken the view that "public use," as now employed in our state Constitution, means use by the public, and this must now be accepted as the established view of this court: *Dalles Lumbering Co.* v. *Urquhart,* 16 Or. 67, 71 (19 Pac. 78); *Witham* v. *Osburn,* 4 Or. 319 (18 Am. Rep. 287); *Bridal Veil Lumbering Co.* v. *Johnson,* 30 Or. 205 (46 Pac. 790, 60 Am. St. Rep. 818, 34 L. R. A. 368); *Apex Transp. Co.* v. *Garbade,* 32 Or. 582, 587 (52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513); *Anderson* v. *Smith-Powers Logging Co.,* 71 Or. 276 (139 Pac. 736, L. R. A. 1916B, 1089); *Hammond Lumber Co.* v. *Public Service Commission,* 96 Or. 595, 604 (189 Pac. 639, 9 A. L. R. 1223).

Our attention has been called to the fact that large areas of arid lands are to be found in Oregon and that it is impossible to develop these areas without water, and that this necessity now and then puts it in

the power of a curmudgeonly or perverse owner to retard or even prevent the development of his neighbor's land. Oregon has some of the largest and finest timbered areas in the world. The commercial timber now standing in Oregon is worth billions of dollars. Timber is one of the foremost resources of this great commonwealth; and this fact was strongly but unsuccessfully urged in *Anderson* v. *Smith-Powers Logging Co., supra,* as a reason for permitting the condemnation of a right of way for a logging road which was to be used for hauling the logs of the condemnor. Although the conclusion reached in *Anderson* v. *Smith-Powers Logging Co.* forecloses further discussion of the question under consideration, the writer is prompted to direct attention to Chief Justice COOLEY's remarks made in *Ryerson* v. *Brown,* 35 Mich. 333 (24 Am. Rep. 564, 571):

"A person may be very unreasonable in insisting on retaining his lands; but half the value of free institutions consists in the fact that they protect every man in doing what he shall choose, without the liability to be called to account for his reasons or motives, so long as he is doing only that which he has a right to do."

Of course, the use of water for the irrigation of arid lands may be for a public use just as the use of a railroad may be for a public use (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes); 1 Lewis on Eminent Domain (2 ed.), § 202; 3 Farnham on Waters and Water Rights, §§ 622 and 625), and while the fact that the use of water is confined to the inhabitants of a restricted locality or neighborhood will not of itself prevent such use from being a public use, there is a vast difference between confining the use of a ditch to a particular individual and

making it available to all the individuals of a given locality, just as there is a vast difference between confining the use of a railroad to hauling logs of a single individual and making. the railroad available to all who wish to use it: *Vetter* v. *Broadhurst,* 100 Neb. 356 (160 N. W. 109, 9 A. L. R. 578, 582).

In the instant case there is no possible ground upon which it can be said that the attempted condemnation is for a public use unless it can be said that the irrigation of plaintiffs' land is a public use because it will be a "public benefit." The ditch is privately owned and is used for the purpose of carrying water to the lands of the owners of the ditch. If the plaintiffs are permitted to condemn the right to enlarge and use the ditch to carry their water to their land such right will be their right and their right only; it will be a private right, privately used, and employed in furthering their private purpose. Condemnation by the plaintiffs would not create a like right for any other owner of land. No other person could use the ditch without the consent of the owners of it unless he also acquired such right by a condemnation proceeding.

If it is desirable as a matter of public policy that a private person may be permitted to condemn private property so that he can irrigate his own private land, the remedy is, as was suggested in *Anderson* v. *Smith-Powers Logging Co.,* by an amendment to the Constitution: See *State ex rel. Galbraith* v. *Superior Court,* 59 Wash. 621, 627 (140 Am. St. Rep. 893, 110 Pac. 429).

The judgment is affirmed.            Affirmed.

Burnett, C. J., and McBride and Rand, JJ., concur.