Argued April 16, 1926, affirmed February 1, 1927.

OREGON–WASHINGTON RAILROAD & NAVIGATION COMPANY ET AL. *v.* H. H. COREY ET AL., CONSTITUTING THE PUBLIC SERVICE COMMISSION.

(252 Pac. 955.)

Carriers—Carrier, Attacking Intrastate Rate Established by Commission, must Show That Order is not Supported by Substantial Evidence or for Some Other Reason is Unlawful, Unreasonable, or Unjustly Discriminatory (Or. L., §§ 5855, 5856).

1. Carrier, attacking an intrastate rate established by order of Public Service Commission, must show by clear and satisfactory evidence that order establishing rate is not supported by substantial evidence or for some other reason is unlawful, unreasonable or unjustly discriminatory. Otherwise order must stand in view of Sections 5855, 5856, Or. L.

Carriers—Finding of Commission on Question of Reasonableness of Rates is Conclusive on Courts, in Absence of Irregularity in Proceedings or Lack of Substantial Evidence or Error of Law.

2. Unless findings are not supported by substantial evidence, or there is irregularity in proceedings, or some error in application of rules of law, findings and orders of Public Service Commission on question whether old rates were unreasonable or discriminatory and whether new rates are reasonable and not discriminatory, are conclusive upon courts.

---

2.   See 4 R. C. L. 633.

Carriers—That Financial Distress of Farmers Induced Commission to Investigate Rates Did not Affect Validity of Rates Fixed by Commission.

3. That financial distress of farmers was principal cause which impelled Commission to investigate railroad rates did not affect validity of rates fixed, where large number of persons urged Commission to establish more reasonable rates, since in such case it was Commission's duty to investigate and substitute reasonable rates for those found unreasonable.

Commerce—Slightly Lower Intrastate Rate Held not Discrimination Against Interstate Commerce, Where Difference in Distance Justified Difference.

4. Twenty cents per ton lower rate from Hermiston, Oregon, to Portland, than from Touchet, Washington, to Portland, *held* not to create unlawful discrimination against interstate commerce, considering difference in length of two hauls.

Carriers—Commission had Power to Abolish Arbitrary Charge Over Branch Roads and Make Rate to Apply Equally on Branch and Main Lines.

5. Public Service Commission had power to abolish arbitrary charge included in charge for shipments over branch roads and make rate apply equally to both branch and main lines of any carrier, if it was sufficient to compensate carrier for greater cost of branch line traffic.

Commerce—Fixing of Reasonable Intrastate Rate, Which Compels Interstate Carrier to Meet Rate by Like Deduction, is not Discrimination Against Interstate Commerce as Matter of Law; "Unlawful Discrimination."

6. Fixing of intrastate rate, which compels interstate carrier to make like deduction of same arbitrary charge to obtain its share of traffic, is not unlawful discrimination against interstate commerce as matter of law, where rate fixed is reasonable for services rendered.

Carriers—Only Public Service Commission may Determine Weight of Evidence in Its Bearing on Reasonableness of Rate.

7. Courts cannot pass upon conflict of testimony nor determine weight of evidence in its bearing on reasonableness of railroad rate, since these questions are for Public Service Commission only.

Carriers—Commission had Power to Establish Through Routes and Joint Rates Over Lines Separately Owned.

8. Public Service Commission had power to establish through routes and joint rates over lines separately owned, and to make joint rate less than combination of local rates under which traffic previously moved.

Carriers—Burden of Proving That Joint Rate, With Added Differential for Transportation Over Two or More Separately Owned Lines, was not Reasonable, was on Carriers.

9. Burden of proving that joint rate for services rendered, with added differential for transportation over two or more

8. See 4 R. C. L. 645.
9. See 4 R. C. L. 633.

separately owned lines, fixed by Commission, was not reasonable rate, was upon carriers attacking it.

**Carriers—Difference in Value of Product Transported from Different Sections of State was Rightfully not Considered, Where Disparity in Value Did not Justify It.**

10.   Fact that hay grown in Eastern Oregon was of higher value than that grown in Western Oregon was rightfully not considered in fixing maximum distance scale of rates applicable to transportation of hay, where there was no such disparity in value as justified Commission in doing so.

**Carriers—Where Evidence Did not Show to What Extent Earnings of Carriers had Decreased Because of New Rates, Court Could not Set Aside or Vacate Rates on Ground of Their Being Confiscatory (Or. L., §§ 5856–5858, 5860).**

11.   Where evidence did not show to what extent, if at all, earnings of carriers had been decreased through putting into effect of new rates, there was nothing in record entitling court to set aside or vacate rates as being confiscatory, in view of Sections 5856–5858, 5860, Or. L.

**Constitutional Law—Courts cannot Make Changes in Railroad Rates if They are Found to be Inadequate for Services Rendered (Or. L., §§ 5856–5858, 5860).**

12.   Courts have no power to change railroad rates set by Commission, if they are inadequate for services rendered, but Commission must make changes in rates as exigencies of case require, in view of Sections 5856–5858, 5860, Or. L.

---

Carriers, 10 **C. J.**, p. 408, n. 15, p. 410, n. 42, p. 415, n. 91 New, p. 427, n. 52, 53, 59, p. 428, n. 72 New, p. 438, n. 4, p. 493, n. 98 New, p. 508, n. 69.

From Marion: PERCY R. KELLY and L. H. Mc-MAHAN, Judges.

In Banc.

'AFFIRMED.

For appellants there was a brief over the names of *Mr. A. C. Spencer, Mr. Paul P. Farrens, Messrs. Carey & Kerr, Mr. C. A. Hart, Mr. Ben C. Dey, Messrs. Griffith, Peck & Coke* and *Mr. W. A. Robbins,* with oral arguments by *Mr. Robbins, Mr. Farrens* and *Mr. Hart.*

For respondents there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. W. P. Ellis,* with an oral argument by *Mr. Ellis.*

RAND, J.—This is a suit brought pursuant to the provisions of Sections 5856–5858 and 5860, Or. L., to set aside and vacate certain orders of the Public Service Commission of Oregon, establishing intrastate rates for the transportation by rail wholly within the state of certain agricultural products. The proceedings in which these rates were established were instituted by the Commission on its own motion for the purpose of investigating the reasonableness of the rates which were then applicable to the transportation of said products. Pursuant to such investigation, the Commission first made and entered its order No. 1027 P. S. C. O., which prescribed for the intrastate transportation over the lines of the plaintiffs, a maximum distance scale of rates to be applied jointly and locally by plaintiffs on carload shipments of hay and straw, which by its terms became effective on January 21, 1924. Prior to said effective date, each of the plaintiff carriers published and filed tariff supplements, putting said rates into effect, but limiting their application by the following notation: "Note 12—Where shipments of hay or straw are made over two or more lines, the rates named in schedule No. 6 will not be subject to the rules covering diversion and reconsignment as published in tariff of individual lines on file in the Public Service Commission of Oregon." On January 19, 1924, the Commission by order No. 1040 P. S. C. O. prescribed a like maximum distance scale of rates on grain, grain products, potatoes and onions, which order authorized a differential

for transportation over certain branch lines of the Oregon-Washington Railroad & Navigation Company, but denied any differential over other branch lines of that carrier or over the branch lines of any of the other carriers.   On January 31, 1924, by order No. F–1171, the Commission held that the provisions of Note 12 were illegal and ineffective and prohibited the carriers from putting the same into effect.   After the rendition of said orders, the plaintiff carriers instituted this suit to enjoin the enforcement thereof, and a temporary injunction was issued as prayed for in the complaint.   During the trial other and additional evidence was introduced and pursuant to the provisions of Sections 5858, Or. L., a copy of such evidence was transmitted by the Circuit Court, to the Commission for its further consideration, and after considering the same the Commission made its final order designated as supplemental order No. 1131 P. S. C. O., the material parts of which are as follows:

"That just, reasonable and non-discriminatory maximum rates for the future, to apply jointly and locally over the lines of said carriers for the intra-state transportation of hay, straw, grain and grain products, potatoes and onions, carloads, as more specifically defined in the tariff of respective carriers, between points in Oregon, subject to a through minimum charge of $15.00 per car and current minimum carload weights as published in the tariffs of the originating carrier, shall not exceed the following:

"The rate for a distance of five miles and under shall be four cents per one hundred pounds.   For each succeeding five miles the rate shall increase not to exceed one cent per one hundred pounds for each five miles for hauls up to and including twenty-five miles; the rate thereafter shall increase not to exceed one-half cent per one hundred pounds for each five miles for hauls up to and including one hundred miles; the

rate thereafter shall increase not to exceed one-half cent for each ten miles up to and including four hundred miles, and the rate thereafter shall increase not to exceed one-half cent for each twenty miles up to and including six hundred miles.

"That for joint application for hauls for two or more lines, the scale should be increased by adding thereto the following differentials:

"For distances of from one to one hundred miles, three cents; from one hundred to two hundred miles, two and one-half cents; from two hundred to three hundred miles, two cents; from three hundred to four hundred miles, one and one-half cents; and from four hundred to five hundred miles, one cent.

"That the provisions of Order No. 1040 permitting a ten (10) per cent differential on certain branch lines should be cancelled and rescinded and the rates hereinbefore provided applied uniformly on all main and branch lines of the carriers here involved.

"In applying the rates here prescribed on all the commodities hereinbefore named, lines under common ownership or control shall be considered as a single line."

Thereupon the Circuit Court entered a decree, dissolving the injunction and dismissing the suit, and from this decree the plaintiffs have appealed.

Plaintiffs contend that these Commission-made rates are unlawful in that they are so unreasonably low that they will prevent the carriers from making a fair return upon the aggregate value of the railway property which they hold and use for transportation purposes, and therefore are confiscatory and will result in depriving the carriers of their property without due process of law. They also contend that these rates are discriminatory, in that they favor some as against other localities within the state, and also favor intrastate shippers as against persons shipping interstate from territory contiguous to the lines of the

carriers in adjoining states, and also upon numerous other grounds, some of which will be noticed later. Before considering any of these contentions, there are certain preliminary legal questions which need to be noticed, since in our opinion, in view of the condition of the record before us, they are largely decisive of all of the matters of law involved upon this appeal. The first is the question upon whom does the burden of proof rest in suits brought to enjoin the enforcement of orders of the Public Service Commission of Oregon which put into effect an intrastate rate, and the other is what force and effect should be given to the findings of the Commission upon which those orders are based, and what powers may be exercised by the Commission in determining what constitutes a reasonable intrastate rate.

1. The first of these questions is settled by the statute. Section 5855, Or. L., provides that: "all rates, fares, charges, classifications and joint rates fixed by the commission shall be in force and shall be *prima facie* lawful, * * until finally found otherwise in an action brought for that purpose pursuant to the provisions of Sections 5856, 5857, 5858 and 5860 of this act." Section 5856, Or. L., provides that: "In all trials under this section and sections 5857, 5858 and 5860, the burden of proof (shall) be upon the plaintiff to show by clear and satisfactory evidence, that the order of the Commission complained of is unlawful, or unreasonable, as the case may be." By force of these statutes, the burden of proving that an order of the Commission, when supported by substantial evidence, is unlawful, unreasonable or unjustly discriminatory, rests upon the plaintiffs in the suit, and not upon the Commission. Hence, a carrier attacking an intrastate rate, established by an order

of the Commission, must show "by clear and satisfactory evidence," that the order establishing the rate is not supported by substantial evidence, or that for some other reason it is unlawful, unreasonable or unjustly discriminatory, or else the order must stand. See *Southern Pac. Co.* v. *Railroad Com.*, 60 Or. 400, 408 (119 Pac. 727, 9 A. L. R. 1223); *Hammond Lumber Co.* v. *Public Service Com.*, 96 Or. 595 (189 Pac. 639), and *Minneapolis etc. Ry. Co.* v. *Railroad Commission of Wisconsin*, 136 Wis. 146 (116 N. W. 905, 17 L. R. A. (N. S.) 821).

2. Upon the question of the effect to be given to the findings of the Commission, when supported by substantial evidence, it was held in the case first cited, that they are to be given "the weight due to the decisions of a tribunal authorized by law, and informed by experience," and in the second case cited it was held: "A finding without evidence * * is arbitrary and beyond the power of the commission; and an order based thereon is contrary to law and subject to be set aside by a court of competent jurisdiction," and that, "the courts will not review the commission's conclusions of fact * * by passing upon the credibility of witnesses or conflicts in the testimony." In a late case decided December 3, 1926, the Supreme Court of the United States in *Virginia Ry. Co.* v. *United States,* 47 Sup. Ct. Rep. 222, said:

"Whether a rate is unjustly discriminatory is a question on which the finding of the Commission, supported by substantial evidence, is conclusive, unless there was some irregularity in the proceeding or some error in the application of rules of law. * * The finding of reasonableness, like that of undue prejudice, * * is a determination of a fact by a tribunal 'informed by experience.' * * This court has no concern with

the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it."

Hence, under these decisions, unless it appears that the findings are not supported by substantial evidence, or that there has been some irregularity in the proceedings, or some error upon the part of the Commission in its application of the rules of law, the findings and orders of the Commission upon the question of whether the old rates were unreasonable or unjustly discriminatory, as well as upon the question of whether the Commission-made rate is reasonable and not discriminatory, are conclusive upon the courts.

In opposition to what has just been said, plaintiffs cite *Louisville & Nash. R. R. Co.* v. *United States,* 238 U. S. 1 (59 L. Ed. 1177, 35 Sup. Ct. Rep. 696), where the court said: "Where an existing freight rate is attacked, the burden is on the complainant to establish that it is unreasonable in fact. This is especially so where, as here, the rate has been in force for a long period during which time the traffic greatly increased in volume." In that case, while the complainant was not the carrier, the court was speaking of an interstate rate and in a suit brought in a federal court. The language used, therefore, is not applicable to a suit brought under our statute. But regardless of that, the rates which were in existence at the time these proceedings were instituted by the Commission, had not been in force for a long period. It appears from the exhibits offered that by general order No. 28 of the Director General of Railroads, effective June 25, 1918, commodity rates on wheat, hay and other farm products were increased 25 per cent, but not

exceeding an increase of six cents per hundred pounds. On July 29, 1920, by order of the Interstate Commerce Commission, effective August 26, 1920, carriers were authorized to increase their interstate rates within the mountain Pacific group 25 per cent, and in one of the exhibits offered by the plaintiffs, Mr. Aitchison of the Interstate Commerce Commission says that, "similar increases have been made in the intrastate rates." On October 20, 1921, by order of the Interstate Commerce Commission, the rates applicable to interstate shippers were reduced. See Rates on Grain, etc., 64 I. C. C., 85, 87. This shows that instead of having been in force for a long period, the rates in question have been frequently changed in recent years.

3. The carriers contend that the Commission instituted these proceedings and was influenced in fixing the rates complained of by the financial distress of the farmers, and its desire to afford them relief through a reduction of their freight rates, and that this was beyond the powers of the Commission and constituted a mistake of law, which makes it the duty of the court to vacate and set aside the orders complained of. In support of this contention they cite *Southern Pac. Co.* v. *Interstate Commerce Com.*, 219 U. S. 433 (55 L. Ed. 283, 31 Sup. Ct. Rep. 288), where so far as applicable to this particular question the facts were, the complainant company after having established and maintained for a number of years a rate of $3.10 per ton upon lumber shipped from Willamette Valley points and Portland, put into effect a new rate of $5 per ton. Complaint against the new rate was made to the Interstate Commerce Commission, and during the hearing the new rate of $5 per ton was admitted

by all parties concerned, to be a just and reasonable rate for the services rendered; but on the ground of policy and because of a supposed estoppel against the carrier, on account of the old rate having been put into effect and maintained for a number of years, and large investments in the lumber business having been made in reliance thereon, the Commission, notwithstanding that the new rate was a just and reasonable rate, reduced the rate upon shipments originating in the Willamette Valley, and left it in effect upon shipments originating in Portland.   In a suit brought by the carrier to enjoin the enforcement of the rate fixed by the Commission, Mr. Chief Justice WHITE, speaking for the court, in effect held - that where a rate fixed by the carrier is a just and reasonable rate, the Interstate Commerce Commission has no authority to substitute a lower rate, either on the ground of policy or on the ground that the carrier was by its former conduct estopped from charging a reasonable rate.   In the instant case there is no such admission.   The question of the reasonableness of the old rates in force when these proceedings were instituted was a matter in dispute between the Commission and the carriers, and a large number of persons were urging the Commission to establish what they believed to be a more just and reasonable rate. Under such circumstances, it was the duty of the Commission to make the investigation, and if it found that the old rates were unreasonable, it had authority under the statute to substitute reasonable rates for those found to be unreasonable.   While it is possible that the financial distress of the farmers was largely the cause which impelled the Commission to make the investigation, that fact alone does not in any way

affect the validity of the rates fixed by the Commission, and there is nothing in the record which shows that the Commission accorded to that fact any more importance than it was justly entitled to, or that any wrongful motive entered into or in any way affected the Commission's determination of what was a reasonable rate. Hence, while as announced by Mr. Chief Justice WHITE, neither the Interstate Commerce Commission nor the Public Service Commission of Oregon is authorized to reduce a rate which is conceded by everybody concerned to be a reasonable rate for the services rendered, the dissimilarity in the facts of the two cases makes the rule followed in that case inapplicable here.

Having thus disposed of these preliminary questions, and bearing in mind that the findings of the Commission, when supported by substantial evidence, are conclusive upon the courts, unless there was some irregularity in the proceedings, or some error in the Commission's application of the rules of law, consideration will now be given to the main contentions of the carriers, namely, that the Commission-made rates are unreasonably low and will deprive the carriers from earning a fair return upon the aggregate value of the property held and used for transportation purposes, and will cause an undue, unjust and unreasonable discrimination against interstate commerce.

4. The carriers contend that the putting into effect of the Commission-made rates causes an undue, unjust and unreasonable discrimination against interstate commerce. This discrimination, they argue, exists first, in favor of the intrastate shippers of Umatilla County, Oregon, as against the interstate shippers

of Walla Walla and the surrounding territory in the State of Washington, and second, those who ship intrastate and those who ship interstate along the Deschutes River in Oregon in the vicinity of Bend and Redmond. The two points selected by the carriers as illustrating the alleged discrimination in the rate upon grain are Walla Walla, Washington and Pendleton, Oregon, and upon hay, Touchet, Washington and Hermiston, Oregon, all on the lines of the Oregon-Washington Railroad & Navigation Company. These two sections, the one in Washington and the other in Oregon, are adjoining sections, separated only by the state line. Both of these sections produce and transport by rail to Portland and other coast cities large quantities of grain and hay. Under a blanket intrastate rate which was in force before this investigation was made the Oregon-Washington Railroad & Navigation Company maintained at all points on its main line between Hermiston and Pendleton, and on its Walla Walla branch line between Pendleton and the state line, a rate to Portland on grain of 18½¢ per hundred pounds, and at the same time maintained the same rate on interstate shipments of grain from Walla Walla to Portland. The distance by rail from Portland to Pendleton is 218 miles, and from Walla Walla to Portland, 243.6 miles. Under the provisions of the order complained of, the rates which were in existence at the time of the investigation cannot be increased. From Walla Walla to Seattle the distance by rail is 293 miles, and the Washington intrastate rate on grain is 20½¢ per hundred pounds; while from Pendleton, Oregon, to Seattle, Washington, a distance of 331 miles, the interstate rate is 20½¢. Hence, since there has been no alteration in

120 Or.—34

the Portland rate on grain by reason of the orders complained of, and no difference exists between the interstate rate from Walla Walla to Portland, and the intrastate rate from Pendleton to Portland, both being 18½¢ per hundred pounds, the charge that the intrastate rate is a discrimination in favor of the intrastate shipper is unfounded. The same is true in respect to the rates on hay shipped from the two sections referred to. The two main hay shipping points upon which the carriers base their contention are, Touchet, Washington and Hermiston, Oregon. From the tabulations offered, it appears that the rate on hay shipped from Hermiston to Portland, a distance of 191 miles, until changed by the Commission, was 21½¢ per hundred pounds, while the interstate rate on hay shipped from Touchet to Portland, a distance of 227.7 miles, is 21½¢ per hundred pounds. The interstate rate is, of course, not affected by the orders of the Commission, while the intrastate rate from Hermiston to Portland has been changed by the Commission to 20½¢ per hundred pounds. This gives to the Hermiston shipper a reduction from the old rate of 20¢ per ton and that much of a differential over the interstate rate from Touchet to Portland. Considering the difference in the length of the two hauls, it is clear that a difference in the rate on hay of only 20¢ per ton does not in itself alone constitute an unlawful discrimination.

The facts upon which it is contended that the reduction made by the Commission of the intrastate rates to Portland, on the products in question, from points along the Deschutes River in Oregon constitutes a discrimination against the interstate rate from said points to Portland, are substantially these:

Transportation by rail to Portland from these points may be obtained over either of two roads, one of which is intrastate, the other interstate; the one furnishing the intrastate transportation, is the Oregon-Washington Railroad & Navigation Company, which serves that section by a branch line extending from Sherman, its main line connection to Bend; the other furnishing the interstate transportation is the Oregon Trunk Railway Company, which connects with the Spokane, Portland and Seattle Railway Company at Fallbridge on the north side of the Columbia River, reaching Portland over the tracks of the latter company. Before the investigation, the intrastate and interstate rates were the same. The order of the Commission makes a small reduction of the intrastate rate, which of necessity will compel the interstate carrier to make a like reduction in the interstate rate, or to lose its share of the traffic. This is the discrimination complained of.

5, 6. From the tabulation offered by the Oregon-Washington Railroad & Navigation Company it appears that a considerable volume of grain originating on said branch line is shipped to Portland, and that but few carloads of the other products in question are so shipped. We find nothing in the record showing the quantity shipped over the line of the Oregon Trunk Railway, but assume that the traffic was divided equally between the two carriers. The reduction made by the Commission of the rate on grain and grain products from these points to Portland, if we understand the tabulation correctly, varies from 2¢ to 6¢ per hundred pounds according to distance; but under the old rate, an arbitrary charge of 4¢ per hundred pounds on grain and grain products for trans-

portation over this branch road was included. The Commission disallowed any arbitrary or differential over this or any other branch line belonging to its connecting carrier. Deducting from the amount exacted by the carrier, the amount of this arbitrary charge for transportation over this branch line, there would be but little difference between the two rates. Presumably the Commission, in fixing the maximum distance scale of rates, took into consideration the fact that the cost per ton per mile is much greater for branch line traffic than for main line traffic, and established a rate sufficient in its judgment, to compensate the carrier for this difference. If so, it was within the powers of the Commission to abolish this arbitrary charge and make a rate to apply equally on both branch and main lines of any carrier. If in fixing such rate for an intrastate haul it has the effect of compelling an interstate carrier, in order to obtain its share of the traffic, to meet the rate by making a like deduction of the same arbitrary charge, we cannot say, as a matter of law, that the fixing of a rate having that effect, if the rate so fixed is a reasonable rate for the services rendered, is an unjust or unlawful discrimination against interstate commerce.

7. Upon the question of the reasonableness of the rates established by the Commission, the evidence is conflicting. Numerous tables of rates charged by different roads for transportation of the products in question, some under like and others under different conditions, were offered in evidence by the carriers, or by the Commission. These comparisons show that the rates on some roads are much higher, and upon other roads much lower, than those established by the Commission. We have no power to pass upon this

conflict of testimony, nor to determine the weight of the evidence in its bearing on the reasonableness of the rate. Those questions by law are questions for the Commission and not for the courts. There was substantial evidence to support the findings of the Commission, and there is nothing in the record showing any irregularity in the proceedings before the Commission, or any error in the application by the Commission of the rules of law. Under these circumstances and under the decisions cited, the findings of the Commission upon the reasonableness of the rates established by the Commission are conclusive.

8, 9. One of the principal objections urged by the carriers is the fact that the order of the Commission results in the establishment of through routes and joint rates over lines separately owned, and makes the joint rate less than the combination of the local rates under which the traffic previously moved. The statute confers upon the Commission the power to do both of these things. There was, however, before the orders were made through routes in existence over the various lines, and joint rates made up of a combination of two or more locals. By its order, the Commission abolished the combination of locals, and established one maximum distance scale of rates to apply jointly and locally over the lines of the various carriers, and increased the maximum distance scale of rates where the transportation was over more than one separately owned line by adding to such scale 3¢ per hundred pounds for distances from one to one hundred miles, 2½¢ for distances from one hundred to two hundred miles, 2¢ for distances from two hundred to three hundred miles, 1½¢ for distances from three hundred to four hundred miles, and 1¢ for distances from four hundred to five hundred miles. The

burden of proving that this joint rate, with this added differential for transportation over two or more separately owned lines, was not a reasonable rate was upon the plaintiffs. They have wholly failed to prove that a joint rate thus made up by a combination of the maximum distance scale of rates and this differential is an unreasonable rate for the services rendered, and for that reason the order must stand.

10. The contention is made that the Commission-made rate on hay will result in an unjust discrimination in favor of the eastern Oregon grower as against the Willamette Valley farmer. It appears from the evidence that the hay grown in eastern Oregon is of a superior quality, and commands a higher price in the market than that grown in the western portion of the state, and that the principal market for hay is in the dairying portions of the Willamette Valley and coast counties. The objection comes from the carrier, and not from the hay producers themselves. The eastern Oregon grower pays a higher freight rate, because of the longer haul, than the western Oregon grower. The difference in the value of the product of the two sections of the state was not taken into consideration by the Commission, and rightfully so, in fixing a maximum distance scale of rates applicable to the transportation of hay, for there was no such disparity in value as would justify the Commission in doing so.

11, 12. It appears from the evidence that during the year 1922, and as to some of the carriers during other years, the carriers were unable to earn a fair return in Oregon upon the value of their railway property, and it is argued that any reduction in their earnings, however slight, by reason of a reduction in any of their freight rates, is confiscatory. How far,

if at all, transportation of the products involved upon the hearing has been stimulated by reason of the establishment of the new rates, it is impossible for us to say from any evidence before us.   It is impossible to say to what extent, if at all, the earnings of the carriers have been decreased through the putting into effect of the new rates.   Outside of the traffic over branch lines, most of the grain, as we have shown, reached the Portland market, at a rate less than that fixed generally by the Commission.   There is, therefore, nothing in the record which would entitle this court to set aside or vacate these rates.   The year 1922 was not a good year for railway carriers.   Since that time there has been some improvement in the railway business.   The inability of railway carriers to earn adequate revenues is one of the most serious problems which now confronts the American people, but relief to the railroad, if it comes at all, must come through legislation and not through judicial action. If these or any other rates, are found to be inadequate for the services rendered, it will become the duty of the Commission, upon a proper showing, to make such changes in the rate as the exigencies of the case may require.   We ourselves have no such power.

For the reasons stated, the decree appealed from must be affirmed.                            AFFIRMED.

BEAN, J., not sitting.