Argued February 16; affirmed April 25; rehearing denied July 5, 1933

# CROWN MILLS *v.* OREGON ELECTRIC RAILWAY CO. ET AL.

(21 P. (2d) 214)

*William B. Adams,* of Portland (Teal, Winfree, McCulloch & Schuler and William C. McCulloch, all of Portland, on the brief), for appellant.

*Paul P. Farrens,* of Portland (Alfred A. Hampson, of Portland, on the brief), for respondent Southern Pacific Co.

*A. C. Spencer, W. A. Robbins,* and *F. J. Betz,* all of Portland, for respondent Oregon Washington R. & Nav. Co.

*Charles A. Hart* and *Fletcher Rockwood,* both of Portland, for respondent Oregon Electric Ry. Co.

RAND, C. J. This is an action to recover treble damages under section 62-161, Oregon Code 1930, for an alleged violation of Order No. 1131 of the Public Service Commission of Oregon in its cause No. F-1083. The plaintiff corporation owns and operates a milling plant for the manufacture of flour and other grain products in the city of Portland. Each of the defendants are common carrier railroads and Portland is a terminus common to all defendants. The complaint alleges that between December 4, 1924, and April 1, 1925, certain carload lots of grain were shipped from certain designated points in Oregon over the line of one of said carriers to plaintiff at Portland for which transportation plaintiff was charged and compelled to

pay local rates; that plaintiff manufactured the grain at Portland and shipped the product thereof in the form of flour and feed to other designated points in Oregon over the lines of another carrier, for which plaintiff also was charged and paid local rates, and it is alleged that the combination of the locals thus paid thereon by plaintiff exceeded the amount prescribed by said Order No. 1131 and was in violation of the Commission's said order. This action seeks to recover three times the amount of such alleged excess payments.

The defendants demurred to the complaint on the grounds that it did not state a cause of action, that the court had no jurisdiction of the subject-matter, and that the action was barred by the statute of limitations. The demurrer was sustained upon the first ground and plaintiff was given permission to amend. Failing thereto, judgment of dismissal was entered from which plaintiff appeals.

The complaint nowhere alleges that said Order No. 1131 was in effect at the time the shipments were made, nor does it allege that the privilege of milling in transit had ever been accorded by any carrier at Portland, or that any joint rates had ever been established by any of the carriers for any multiple line haul at or prior to the time the shipments were made. A copy of said Order No. 1131 was attached as an exhibit to the complaint, and, on its face, it shows that it supplemented and modified two orders previously made by the commission. It prescribed local rates to be effective between points on the line of a single carrier and joint rates for application to continuous hauls originating on the lines of one carrier and terminating on the lines of another. It contains no mention or reference to any milling in

transit at Portland or elsewhere, but it does provide that:

"* * * nothing herein contained shall be construed as modifying or changing any existing rates, rules or regulations, provisions or privileges which are on or make a basis lower than the maximum rates established by this Order".

In respect to this order, the complaint alleges that on August 29, 1924, the Public Service Commission of Oregon issued its Order No. 1131 in its cause No. F-1083, and that said order:

"required the establishment and application on the basis therein specified of local and joint rates on grain, flour, mill feed and other farm products by the defendants herein and other carriers and ordered that 'nothing herein contained shall be construed as modifying or changing any existing rates, rules or regulations, provisions or privileges which are on or make a basis lower than the maximum rates established by this order' ".

It further alleges that on the date of said order:

"there existed and there was accorded by the defendants in connection with the rates that the Public Service Commission of Oregon required to be superseded by the rates prescribed in its order No. 1131 aforesaid the privilege of milling grain in transit, whereby the aggregate charges for the inbound movement of grain and the outbound movement of the grain products were computed upon the basis of the through rate on the product from the point of origin of the grain to the destination of the product plus a special charge for the privilege and that the joint rates prescribed by the Public Service Commission of Oregon in its said order No. 1131 in connection with the usual privilege of milling in transit made a lower basis of aggregate charges for the transportation of the inbound and outbound shipments aforesaid than the combination of local rates established by said order No. 1131, etc.".

The complaint also alleges that the defendants wilfully omitted to comply with the order and prior to March 1, 1927, wilfully refused to establish the local and joint rates specified in the order or to accord milling in transit privileges, or to collect the rates prescribed, and alleges that said acts constitute a violation of the provisions of said section 62-161.

The complaint fails to allege that the order was in effect at the time the shipments were made and, because of this failure, the defendants also contend that the complaint is fatally defective. The objection to the sufficiency of the complaint upon the ground that it failed to state that the order in question was in effect during the time the shipments were made grows out of the fact that the action taken by the Commission in making said Order No. 1131 and the other orders referred to was made the subject of litigation in the case of *Oregon-Washington R. & N. Co., et al. v. Corey, et al.* (constituting the Public Service Commission of Oregon), and continued to be in litigation until that suit was finally decided by this court on February 1, 1927. See the opinion of this court in 120 Or. 517 (252 P. 955), where the action of the Commision was in all respects upheld.

Order No. 1131 recites that:

"This matter is before the Commission for further consideration under the provisions of section 5858, Oregon Laws, (now section 62-138, Oregon Code 1930), legal proceedings having been instituted in the Circuit Court of Oregon for the County of Marion, against the previous orders of the Commission entered herein, etc."

The legal proceedings referred to was the suit above referred to of *Oregon-Washington R. & N. Co., et al. v. Corey, et al.*

■ In respect to the proceedings had before the Commission in cause F-1083, the records of the Public Service Commission of Oregon, of which we take judicial notice as provided in section 9-302, Oregon Code 1930, show that the Commission in 1923, after notice to these defendants, instituted proceedings to inquire into the reasonableness of rates and charges for the transportation of farm products by railroad within this state and, after a hearing thereon, made Order No. 1027, which prescribed a scale of rates for the transportation of hay and straw graduated according to the distance carried, and Order No. 1040, which prescribed a like scale of rates for transportation of grain, grain products and other commodities. The carriers then commenced the suit referred to in the circuit court for Marion county and filed their undertaking in conformity to section 62-137, Oregon Code 1930, and obtained an order staying the enforcement of said orders until that case could be determined in that court. Upon the trial of that cause, additional testimony was offered which, in conformity with the provisions of the statute, was referred by the court to the Commission for further consideration. Thereupon Order No. 1131 was made. This order supplemented and modified the two orders previously made. It prescribed local rates to be effective between points on the lines of a single carrier and joint rates for application to continuous hauls originating on the lines of one carrier and terminating on the lines of another. After promulgating said order, the suit was then again tried in said court, and a decree was entered upholding the action of the Commission as to all said orders. That decision was rendered on July 14, 1925, and an appeal was immediately taken therefrom to this court. A supersedeas bond was filed by the carriers and another order was made, staying the

enforcement of the orders until the matter should be finally disposed of in this court. That appeal was heard and decided in favor of the Commission and against the carriers, as stated, on February 1, 1927, and immediately thereafter the rates prescribed and orders given by the Commission were presumably complied with.

From this it appears that the shipments in question were made during the time that the orders of the Commission had been stayed pursuant to the statute and in conformity with its directions, and not being in force at the time, the carriers were not bound to conform to their directions. That being so, it is clear that treble damages cannot be recovered in this action under section 62-161, under which the action was brought. That section provides that, if any railroad shall do, cause or permit to be done any act or thing prohibited or declared to be unlawful by the act, or omit to do anything required to be done by the act, such railroad shall be liable to the injured person in treble the amount of damages sustained in consequence of such violation. Other provisions of the act require performance by the railroads of the lawful orders of the Commission, but there is no provision in the statute imposing against railroads a liability for treble damages for failing to put into effect an order of the Commission during the time its enforcement is stayed by a valid order of the court.

Plaintiff contends, however, that the orders of the Commission were in effect at the time in question by virtue of section 62-139, which provides that all orders made by the Commission upon notice and after hearing shall remain in force until set aside as provided by law and that, since the orders were sustained by the court and have never been set aside, it was not neces-

sary for plaintiff to allege that the orders were in operation at the time the shipments were made. That section must be construed together with section 62-137, which provides:

"After the commencement of such suit the circuit court may for cause shown, upon application to the circuit court or presiding judge thereof, and upon notice to the commission and hearing, suspend or stay the operation of the order of the commission complained of until the final disposition of such suit, upon the giving of such bond or other security, and upon such conditions as the court may require; and if such order of injunction suspends the order or requirement of the commission fixing rates, then the court shall require a bond with good and sufficient surety, conditioned that the railroad or railroads applying for such injunction shall answer for all damages caused by the delay in the enforcement of the order of the commission and all compensation for whatever sums for transportation any person or corporation shall be compelled to pay in excess of the sums such person or corporation would have been compelled to pay if the order of the commission had not been suspended; and such bond shall cover the periods transpiring from time of the issuance of any such injunction until the final determination of the question litigated. The said bond shall be executed in favor of the railroad commission of Oregon for the benefit of whom it may concern, and shall be enforceable by said commission or any person interested, in an appropriate proceeding. Any person paying charges found to be excessive shall have a claim for the excess, whether paid under protest or not, and unless refunded within thirty days after written demand made after final judgment, may recover the same by action against such railroad, or such railroad and the sureties on such bond."

When these two statutes and the remainder of the act are read together, their meaning is plain. Unless set aside in the manner provided by the act, the order

of the Commission is in effect from the time when made for the purposes declared in the act. The order, however, cannot be arbitrary or unreasonable and must be lawful and the right to have that question determined by a proper proceeding brought in the courts is given by the statute and, pending such proceeding, the operation of the order may be stayed. When such litigation has been determined in favor of the Commission, then the statute provides that any person, who has been compelled to pay any sum of money in excess of the amount which he would have been compelled to pay if the order of the Commission had not been stayed, shall be entitled to be repaid such excess amount, and requires the railroad to repay the same, whether the excess was paid under protest or not, and upon failure of the railroad to repay the same, gives the injured party a right of action to recover the same from the railroad and its surety, or from the railroad alone. For this purpose and others named in the statute, the order is effective even when stayed. But it is not effective for the purpose of entitling a shipper to treble damages for some act done by the railroad during the time the order is stayed which could lawfully have been done had the order not been made. In such case, he is entitled under the plain provisions of the statute to single damages only. This action was brought for the recovery of treble damages for an alleged wilful violation of an order of the Commission. To entitle plaintiff to recover such damages, it was necessary for it to allege in its complaint that the order was in force and effect at the time its cause of action arose.

■■ This complaint seems to have been drawn on the theory that since each carrier, prior to the making of the order, had accorded to grain shipments over their individual lines a milling in transit rate at some inter-

mediate point or points on their individual lines, the mere establishment of this order by the Commission of through routes and joint rates over two or more lines which interchanged at Portland resulted in establishing transit at Portland upon all grain passing through Portland under a joint rate notwithstanding that the order itself makes no mention or reference to any milling in transit at Portland or elsewhere. This right or privilege, it says, results from the negative clause contained in the order that "nothing herein contained shall be construed as modifying or changing any existing rates, rules or regulations, provisions or privileges, etc." It contends that this particular clause in itself alone extended the same transit privilege at Portland, although never granted therebefore, that other intermediate points on the line of a single carrier had theretofore enjoyed. This contention, of course, assumes that the establishment of joint rates on commodities passing through Portland and interchanged by one carrier at that point with another made Portland an intermediate point of the through route, and entitled it to the same privileges that had been theretofore enjoyed by other intermediate points on the line of a single carrier. The order does not so provide and there is no reasonable grounds upon which such a contention can be based. Particularly is this true in reference to the shipments involved here.

According to the allegations of this complaint, the grain was shipped to plaintiff at Portland and over a single line which terminated at Portland. When it reached Portland, its journey was ended and when delivered to the consignee or other person designated in the bill of lading, the contract of carriage had been completely performed. What should then be done with the grain was a matter wholly for the consignee to de-

cide and was of no concern to the carrier. The subsequent milling of it at Portland by plaintiff and the shipment of the product over another line was a new shipment having no relation whatever to the first shipment. The transportation from the first to the latter point was not continuous nor was it of the same commodity. It was not a case where grain originating on one line was shipped to a point on another road under one bill of lading and to one named consignee with the privilege of milling in transit. The order applied only to some existing rate or privilege and there was no such existing privilege at Portland. To contend, therefore, that the terms of the order entitled plaintiff to receive this grain at Portland and reship the product of it to some one else at some other point on some other line is wholly without any substantial foundation. To designate as milling in transit the privilege which plaintiff seeks to obtain under the circumstances involved would be a mere misnomer. It is not even suggested by plaintiff that it would be entitled, under the allegations of this complaint, to recover any difference which may exist between the commission-made rates and those charged by the carriers unless plaintiff was entitled to milling in transit privileges at Portland. Not being so entitled, the complaint does not state a cause of action even for the recovery of such difference, if any such existed. In fact, the complaint contains no allegations from which the computation could be made if there was such difference.

For these reasons, the judgment appealed from must be affirmed, and it is unnecessary to consider the other points raised by the demurrer. Judgment affirmed.

BELT, ROSSMAN and CAMPBELL, JJ., concur.