Argued February 28; affirmed April 16, 1940

# OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY ET AL. *v.* BEAN ET AL.

(101 P. (2d) 230)

In Banc.

*Wm. P. Ellis*, of Salem (I. H. Van Winkle, Attorney General, Willis S. Moore, Assistant Attorney General, and Jay Bowerman and John H. Hall, both of Portland, on the brief), for appellants.

*Roy F. Shields*, of Portland (A. A. Hampson, Paul P. Farrens, and Carey, Hart, Spencer & McCulloch, all of Portland, on the brief), for respondents.

RAND, C. J. This suit was instituted by the Oregon-Washington Railroad & Navigation Company and three other railroad carriers, as plaintiffs, to set aside two orders of the Public Utilities Commissioner of Oregon and to enjoin such Commissioner and the Attorney-General from enforcing said orders, and also to enjoin some 55 shippers, who were made defendants in the suit, from instituting or prosecuting actions to recover the reparation awards contained in one of said orders.

The two orders so sought to be set aside are designated respectively as P. U. C. Oregon Order No. 2093 and P. U. C. Oregon Order No. 2220, the first of which was made and entered on March 27, 1933, and the latter on February 21, 1934. In the first of these orders, the Commissioner commanded the plaintiffs and other common carriers named therein to cease and desist from exacting on all intrastate shipments of grain and grain products from points in Oregon to Portland any

rates or charges in excess of the distance maximum scale of rates, prescribed by the Public Service Commission of Oregon in its Order No. 1040 as amended by its Order No. 1131. The second order sought to be set aside herein recites that, in transporting grain and grain products, the plaintiffs had exacted from the shippers named as defendants herein rates and charges in excess of those prescribed in said orders No. 1040 and No. 1131, and awarded reparations to said shippers for the various amounts which the Commissioner held had been paid in excess of the rates and charges prescribed in the orders of the Public Service Commission, which has since been replaced by the Public Utilities Commissioner of Oregon. These separate awards range from $2.56, awarded to one shipper, to $74,458, awarded to another. The total of said awards aggregated more than $211,000. Of this total sum, all except $1,597.96 was awarded against the Oregon-Washington Railroad & Navigation Company alone.

Orders No. 1040 and No. 1131, which are referred to in and made the basis of the two orders sought to be set aside herein, were made pursuant to an investigation by the Public Service Commission of Oregon on its own motion to determine the reasonableness of the intrastate rates then prevailing on shipments of grain and other farm products from points in Oregon to Portland.

At and prior to said investigation, all shipments of grain and other farm products from points within the state to Portland, whether interstate or intrastate, were transported under the same rates which were common to both and such rates were on a point-to-point basis. This parity of rates that had theretofore been applicable, both as to interstate and intrastate shipments,

was eliminated by said orders No. 1040 and No. 1131, and thereafter the carriers were directed by the Commission to put into effect, as applicable to all such intrastate shipments, a distance maximum scale of rates, which were generally lower than the established interstate rates applicable to the same commodities and between the same points, and said orders were held to be valid and enforceable in *Oregon-Washington Railroad & Navigation Company v. Corey*, 120 Or. 517, 252 P. 955. The mandate approving those orders was filed and entered in the circuit court for Marion County on March 1, 1927, and, on that day and in compliance therewith, the plaintiffs filed with the Public Service Commission of Oregon published tariffs putting into effect, as applicable to all intrastate shipments, rates identical with those prescribed in said orders. This disparity between the interstate and intrastate rates continued to exist until on or about April 1, 1931, when the Interstate Commerce Commission, under the authority of section 13 of the Interstate Commerce Act, removed the disparity and made the same rates applicable to the same commodities when shipped between the same points regardless of whether the shipment was interstate or intrastate.

The controversy involved in the present suit concerns 9,959 carloads of grain which were shipped to Portland from points in Oregon prior to April 1, 1931. The rates charged and collected upon 9,811 of these carload shipments were the established interstate rates. The rates charged and collected upon the remaining 148 carload shipments were the intrastate rates so established by the Public Service Commission which had been put into effect on March 1, 1927, plus certain extra charges for transit, reconsignment, diversion or

switching privileges, all of which said extra charges were in conformity with the tariffs then on file with the Public Utilities Commissioner of Oregon.

■ In this connection it must be remembered that it is as much the duty of the shipper to pay the established rate as it is the duty of the carrier to exact that rate.

The two orders sought to be set aside herein were based upon a complaint filed by the shippers of the 9,959 carloads, in which they alleged that all said shipments were intrastate shipments and that, upon all of them except said 148 carloads, they had been compelled to pay the interstate rate and that, upon the 148 carloads, they had been compelled to pay, in addition to the intrastate rate, said extra charges. Upon the hearing of said complaint before the late Honorable Charles M. Thomas, who was then the Public Utilities Commissioner of Oregon, there was no evidence offered which in any way tended to show that, with the exception of said 148 carloads, any of said shipments were intrastate shipments. Nor was any evidence offered tending to show that these extra charges, which had been exacted upon the 148 carloads that had been shipped intrastate, did not conform to the published tariffs on file with said Commissioner at said time. But the said Commissioner was of the opinion that, since all said shipments moved under straight bills of lading from the point of origin to Portland and were there delivered to the consignees, or to their orders, the shipments were intrastate shipments regardless of whether such shipments were destined to another state or to a foreign country. Based upon said erroneous conclusion of law, the said Commissioner held that all said shipments were intrastate shipments terminating

at Portland and awarded to the shippers of the 9,811 shipments the difference between the interstate rate paid thereon and the intrastate rate, and, upon the 148 shipments, all sums paid by the shippers in excess of the intrastate rate which alone would have been chargeable had said privileges not been granted.

This case was before this court in *Oregon-Washington Railroad & Navigation Company v. McColloch*, 153 Or. 32, 55 P. (2d) 1133, and many of the legal questions involved upon this appeal were there settled. Upon that appeal it was held that the defendants' demurrer to the complaint of the plaintiffs herein had been improperly sustained and the cause was remanded to the circuit court for trial upon the merits. The cause has since been tried in the circuit court and is now here upon an appeal by the defendants from a decree granting to the plaintiffs the injunctive relief prayed for in the complaint. It was held in the lower court that all said 9,811 shipments were interstate shipments and that only the proper rates had been exacted and paid thereon. With this finding of the trial court we concur, for the evidence, we think, conclusively shows that all said 9,811 shipments were interstate and not intrastate, as contended for by the defendants. However, if we are in error in respect thereto, the difference between the two rates, as held upon the former appeal, could not be made the basis of an award of reparations under the statutes of this state, since the amount paid would, in such case, be merely an overcharge for which an action at law brought by the shipper against the carrier would lie unless barred by the statute, and was in respect to a matter over which the Commissioner had no jurisdiction. Hence, in respect to these overcharges, if any such existed, the award made by the Commissioner in

the orders above referred to is arbitrary and unauthorized by law and is void.

■ Nor do we know of any legal grounds upon which the awards made by the Commissioner for the charges made by the carriers upon the 148 carload shipments for the extra services above referred to can be sustained. The published tariffs on file with the Commissioner required the payment of these charges for those particular services, and no other sum or sums could have been exacted by the carriers without impairing the integrity of their own tariff rates then on file with the Commissioner. There was no evidence offered before the Commissioner tending to show that these charges or any of them were unjust, unreasonable or discriminatory and, therefore, there was no basis for including them in an award against the carriers. In the absence of such a showing, the Commissioner had no jurisdiction to award reparations for such charges, or any thereof. Hence, the action of the trial court in enjoining these defendants from instituting any action or actions to recover the reparations awarded to the defendants was proper. But, as before stated, if the wrong rate was in fact applied upon any of the shipments involved here, the shipper who paid the overcharge may, unless barred by the statute, bring an action at law to recover not the reparation awarded by the Commissioner but the amount of such overcharge, if any exists.

In passing upon the questions involved upon this appeal, we have had the benefit of an able and exhaustive memorandum opinion made and filed in the court below by the trial judge, setting forth in detail the reasons upon which the decree was entered in said court. We also have had the benefit of the decision of

this court upon the former appeal, where the law of the case was largely stated and settled. After a very careful consideration of the evidence and the briefs on file upon this appeal, we are satisfied that a proper decree was entered in the court below and that the same should be affirmed. It is so ordered.

BEAN and ROSSMAN, JJ., not sitting.